Johnny Ray SMITH

v.

UNITED STATES of America.

Civ. A. No. 1137-N.

United States District Court
M. D. Alabama, N. D.

Jan. 10, 1956.

Hartwell Davis, Robert Varner, and Ralph Daughtry, Montgomery, Ala., for the Government.

William B. Moore, Jr., Montgomery, Ala., for movant Smith.

JOHNSON, District Judge.

The above-styled cause was heard by the Court on the issues as reflected by the pleadings and the proof, beginning December 19, 1955, the evidence consisting of the oral testimony of several witnesses, the exhibits presented, both by the movant and the Government, depositions, and various stipulations of the parties which were dictated into the record. This cause arose from the filing of a motion in the United States District Court for the Middle District of Alabama by Johnny Ray Smith under Section 2255, Title 28 of the United States Code; said motion contains many allegations designed to secure a hearing under said section in order to obtain relief from a sentence of thirty years, which was imposed by this Court on the 21st day of November, 1949, this sentence being imposed upon a plea of guilty entered by Johnny Ray Smith in open court to a charge of violating Section 1201(a) of Title 18 of the United States Code. Prosecution was by information filed by the United States Attorney and will hereinafter be fully set out. This motion was filed and this Court declined to entertain the motion. An appeal was taken and the Court of

Appeals for this Circuit reversed the action of the District Court and remanded the cause for this hearing, which was held as directed.[1]

On September 7, 1955, the Honorable William B. Moore, Jr., was appointed as attorney to represent movant in this cause. This appointment was accepted and movant was fairly and conscientiously represented. On November 15, 1955, this Court ordered movant brought from Alcatraz to Montgomery, Alabama, for the purpose of consulting with his attorney and assisting in the preparation for the hearing; said hearing on this motion was set to be heard December 5, 1955. At the request of movant, the matter was continued until December 19, 1955. The processes of the Court were accorded movant whenever requested, and many witnesses were subpoenaed by movant at the expense of the Government.

Over the objection of the Government, the Court permitted an amendment to the motion, said amendment having been filed and made a part of the record in this cause on December 9, 1955. The pertinent portions of the motion and the amendment thereto are:

"One—Petitioner had been seriously injured before and at the immediate time of his apprehension. Suffering from serious bodily injuries, weak from a heavy loss of blood, sick with influenza, feverish to the point of deliriousness, and being in physical pain, and under mental stress, your petitioner was not in fit or proper physical or mental condition to face or stand judicial proceedings liable to cost forfeit of his life. The facts shown that your petitioner was apprehended four (4) days after the offense with which he was charged had been committed. Petitioner was taken into Court sixty eight (68) hours after his arrest. Petitioner was denied medical treatment for his obvious illness, and injuries, and, on request was flatly refused the undoubted right granted him by the Constitution to contact with an attorney of law, or have any visits from family or friends, petitioner was held in solitary confinment without clothing, was allowed only one thin blanket to keep warm in the unheated cell, petitioner was brusquely informed that his sole and hole chance to ever again see the light of day, was to tell the Court that he the petitioner didn't want any lawyer, wanted to plead guilty to the charge. Further, your petitioner was flatly informed that the judge would ask him if he had been coerced, or threatened to do any of the above, and that his best out was to answer in the negative.

"The minutes of the proceedings had shown the foregoing, however, a search for truth by this court would destroy the technical usefullness of the minutes, as they are based on fear, violence and coercive practices.

"In the case at bar, your petitioner had been browbeaten and frightened into entering a plea of guilty to a crime that he did not commit. Your petitioner was told that he would receive the death penalty unless he entered a plea of guilty, that the only possible way he could avoid the death penalty, that the only out for him, was to enter a plea of guilty. Your petitioner a poorly educated farm boy did not have any knowledge of law and did not know that the death penalty could not be imposed in his case was put in mortal fear of his life before he agreed to enter a plea of guilty.

"Your petitioner was told that the Court could not impose the death penalty unless your petitioner went to trial, and was found guilty by a jury.

"Your petitioner believing that his life was in danger of being for-

1. Smith v. United States, 5 Cir., 1955, 223 F.2d 750.

feited, agreed to follow instructions and enter a plea of guilty, waive indictment and counsel.

\* \* \* \* \*

"Your petitioner was told that his two co-defendants would receive light sentences that would not exceed four years each or until they were of twenty one years age and that your petitioner would receive a similar sentence.

"Your petitioner, while in a groggy and befuddled mental condition, weak from his illness and injuries, was taken unfair advantage of, was deprived of his constitutional rights through trickery and fraud. A search for truth by this Court would confirm your petitioners allegations. Your petitioner did not intelligently waive Constitutional rights to counsel, but to the contrary, your petitioner was tricked into waiving his every constitutional right.

"Two—The supersonic speed and rapidity of the proceedings had, clearly shown a desire on the part of the arresting officers and the prosecutor to make away with petitioner before his recovery from the pain and shock of his injuries and illness would require a careful handling of the case. As it was, the Court in belief that justice was being done, went through the cold formalities of the law, and in so doing, may have provided a legal record, but said record is a fraudulent one when persued to the facts now shown therein, but as herein averred.

"Three—Prior to petitioner's plea of guilty in open court, an agent of the Federal Bureau of Investigation, entered the trial Judge's private chambers, and thereupon told the trial judge that your petitioner had committed a number of crimes which had never been tested in a court of law, and that petitioner had admitted committing said crimes, had made an oral statement to that effect, said agent in question was John W. Lill, the Investigative agent in the case at bar.

"The crimes, agent Lill, told the Court that petitioner had committed was the (1) attempted murder of an officer of the law, to wit one Bill Gilbert, a deputy sheriff at Panama City, Florida. (2) Burglary, of a Mr. Lemmon's home near Blontstown, Florida. (3) Stealing and transporting stolen fire-arms across a state line. (4) Stealing and transporting an automobile across a state line."

\* \* \* \* \*

"Your petitioner was overreached, taken advantaged of by these inchambers and secret accusations by agent John W. Lill. Your petitioner did not have knowledge of these false and prejudicial accusations at the time he entered his plea in open Court nor was your petitioner granted the right to defend himself against their highly prejudicial effect upon the Court.

"Agent John W. Lill's sole purpose for appearing against your petitioner in a private inchambers session, was to prejudice the Court against your petitioner with false testimony.

"The submitting of the false, untested crimes to the trial Judge behind closed doors, was sanctioned by Assistant United States Attorney Hartwell Davis.

"Agent John W. Lill, and Assistant United States Attorney Hartwell Davis, conspired together to the prejudice of your uncounseled petitioner."

\* \* \* \* \*

"He was charged with a capital felony punishable by death.

"Rule 7a, Federal Rules Criminal Proceedure [18 U.S.C.A.], 'An offense which may be punishable by death shall be prosecuted by indictment'.

"Your Petitioner could not waive the right to be indicted.

"Your Petitioner has never been indicted in this case."

The issues, simply stated, were as follows:

(1) Was the sentence imposed upon movant by this Court on November 21, 1949, lacking in due process within the meaning of the Fifth Amendment because of the agent of the Federal Bureau of Investigation giving "false" information as it related to the previous criminal record of the movant, which information was communicated to the Court prior to the time the plea of guilty was entered to the criminal charge. In order to determine this question, it was necessary to determine (a) what, if anything, did the agent of the Federal Bureau of Investigation tell the sentencing Court, and (b) the truth or falsity of that information.

(2) Whether movant's physical or mental condition, or both, at the time he appeared for sentencing before the Court was such that he was able to make an intelligent waiver as to counsel, as to venue, and as to indictment.

(3) Whether or not the defendant was charged with a capital offense, and, if so, can he now question the fact that the case was presented by information rather than by indictment.

It is necessary in order to fully understand what transpired in open court prior to and at the time movant was sentenced on November 21, 1949, to refer to that portion of the record.[2]

2. "The Court: Young men, I am informed that you three young men are being brought before the Court on a charge of kidnapping. Do you understand that is a pretty serious charge? Any one who is charged with a criminal offense in this Court may have the advice of a lawyer if he wants the advice of a lawyer. If you want a lawyer the Court will appoint one and he would come over here and advise you about this matter before disposing of your case, and you would not have to pay him anything. The law doesn't require you to have a lawyer, you have the right to dispose of your case without a lawyer, if you understand that you may have one if you want one. You may waive that right. Now do you want a lawyer?

"Johnny Ray Smith: I don't want a lawyer.

"Richard Dale Nunn: I don't want a lawyer.

"Robert Peter Jenks: I don't want a lawyer.

"The Court: No one has promised you anything or made any threats to get you to waive that right to have a lawyer?

"Defendants: No, sir.

"Q. No one has told you it would be better to dispose of it here today? A. No, sir.

"The Court: The charge being brought into this court here in Montgomery against you is one you would have the right to have go before a federal grand jury and they would decide whether you should be indicted or not and then if indicted you would enter plea on the indictment instead of the information. Do you want to have the case to go to the grand jury. If so, you would have to give bond or remain in jail until we have a federal grand jury and then let them pass on your case. You can waive that right if you see proper and by your consent the United States Attorney will file what we call an information and that takes the place of the indictment. It is simply a written charge of your offense. Smith, do you want to waive your right to go before the federal grand jury?

"Smith: Yes, sir.

"Q. Nunn, do you want to waive your right to go before the federal grand jury?

"Nunn: Yes, sir.

"Q. Jenks, do you want to waive that right?

"Jenks: Yes, sir.

"The Court: Now, you would have the right to have your case in Dothan, and dispose of it there. That is the Southern Division of this Court. In order to dispose of it here in Montgomery you would have to waive that right to have it taken up at Dothan and consent for it to be taken up here in Montgomery, which is the Northern Division. Do you want to do that?

"Smith: Yes, sir.

"Nunn: Yes, sir.

"Jenks: Yes, sir.

"The Court: I don't know how to make it any clearer to them. You have a right to have a lawyer if you want one. We don't want you to feel that your constitutional rights have been imposed on.

Briefly stated, the evidence presented in support of and in opposition to this motion by stipulation, deposition, the record, and oral testimony shows that

"The Court: You each understand that under that charge you can be sent to the penitentiary for a long time? Do you?

"Defendants: Yes, sir.

"The Court: You understand what you were doing when making these waivers?

"Defendants: Yes, sir.

"The Court: Let the defendants sign the waivers.

"Mr. Davis: Johnny Ray Smith, have you read that and had it explained to you by the court and you understand it?

"Smith: Yes, sir.

"Mr. Davis: You wish to sign it?

"Smith: Yes, sir. (Signs the waiver)

"Mr. Davis: Richard Dale Nunn, have you read over this waiver of indictment and you understand it?

"Q. You are in agreement that I file this information against you?

"Nunn: Yes, sir.

"Mr. Davis: You understand it and wish to sign it of your own free will and accord?

"Nunn: Yes, sir. (Signs the waiver)

"Mr. Davis: Robert Peter Jenks, have you had this waiver of indictment read to you and agree to have this information filed against you, and you understand it as explained here in open court?

"Jenks: Yes, sir.

"Mr. Davis: You have read over it and agree to sign it?

"Jenks: Yes, sir. (Signs the waiver)

"Mr. Davis: Each of you have been furnished with a copy of this charge?

"Defendants: Yes, sir.

"Mr. Davis: It is charged in this information that on or about November 14, 1949, Johnny Ray Smith, Richard Dale Nunn, and Robert Peter Jenks, did knowingly transport in interstate commerce from Calhoun County in the State of Florida, to Coffee County in the Middle District of Alabama, a person, to wit, Alan W. Spearman, Jr., who had been unlawfully seized, kidnapped, abducted, and carried away and held for the safe conduct of the three defendants from Calhoun County, Florida, to Coffee County, Alabama.

"Q. Are you guilty or not guilty, Johnny Ray Smith?

"Smith: Guilty.

"Q. Are you guilty or not guilty, Richard Dale Nunn?

"Nunn: I am guilty.

"Q. Are you guilty or not guilty, Robert Peter Jenks?

"Jenks: I am guilty.

"The Court: You each of you plead guilty of this information and you are aware of the fact that the Court could sentence you to life imprisonment?

"Defendants: Yes, sir.

"The Court: No one has promised you anything or given you any inducement to enter that plea of guilty?

"Defendants: No, sir.

"The Court: Have you been threatened or coerced by any one in pleading guilty? A. No, sir.

"The Court: I will say I am really amazed myself with your past criminal activities and in Smith's case particularly it is pretty bad, and not good for these other boys. How old are you, Smith?

"Smith: I am twenty-six.

"The Court: Are your parents living?

"Smith: Yes.

"Q. Where do they live? A. In Monroe County.

"Q. Do they know about your prison trouble? A. I don't think so.

"Q. Have they taken any interest in your trouble in Florida? A. I asked them not to come. I did not want my mother there, she is in bad health.

"The Court: How old are you, Nunn?

"Nunn: I am seventeen.

"Q. Have you had trouble in Court before? A. Yes, sir. In Panama City.

"Q. Where is your home? A. In West Virginia.

"Q. Are your parents living? A. My mother is.

"Q. Does she know about this? A. No, sir. I don't want her to until I get my sentence.

"Q. You have had trouble besides what you were in jail for? A. Yes, sir. In the Air Force.

"Q. What was that? A. Grand Larceny.

"Q. How long was the sentence? A. A year and nine months.

"Q. Did you escape that sentence. A. Yes, sir.

"Q. You boys were armed on this trip you made when you forced that man to drive from Florida with you?

"Smith: We had a shotgun.

"Q. Didn't you have an automobile? A. Not until after we got here.

"Q. How old are you Jenks? A. I am seventeen.

"Q. Are your parents living? A. Yes, sir. They live in Minneapolis, Minn.

"Q. Have you had trouble before this? A. Yes, sir.

Johnny Ray Smith broke out of jail in the State of Florida on or about the 12th day of November, 1949, and, in breaking out, fell to the ground, injured his head and back; that he and his two companions, who were codefendants at the time Smith appeared before this Court for sentencing, stole an automobile by kidnapping the driver and forcing him at the point of a gun to permit them to use his automobile and escape. Further, that when Smith appeared before the Court for sentencing, he had a cut leg, fever, and a headache. This testimony was supported by other testimony and by statements made by fellow prisoners and admitted in evidence by stipulation. The evidence showed without conflict that Smith and his companions escaped from the Florida authorities by walking or running and covered a considerable distance on foot in effecting this escape prior to the time they obtained the automobile. Smith further testified that he requested medical attention while awaiting sentence from the time of his apprehension on November 18, 1949, until he was sentenced on November 21, 1949, that medical attention was denied him. Smith

further testified that he was weak from the loss of food and sleep.

In this connection, the Government introduced testimony from agents of the Federal Bureau of Investigation and former city detective of the City of Dothan. This testimony was to the effect that Smith was apprehended on November 18, 1949, that he did not appear to need medical attention, that he did not request medical attention, and that it was not at any time denied him. Other witnesses who, as far as the record shows, have no interest in this cause testified they did not notice what appeared to be a physical or mental impairment. This testimony was from jailers, court crier, highway patrolman, city police, deputy marshal, United States commissioner that arraigned Smith on the 18th day of November, 1949, and Smith's attorney in a previous case. The gist of the testimony given by these witnesses was that Smith from November 18, 1949, through and including November 21, 1949, appeared to be alert and did not make any complaint to them regarding his mental condition; the only complaint regarding his physical condition was to a jailer and that to the effect that he

"Q. You had trouble while waiting trial in Panama City? A. Yes, sir.

"Q. Do you want your parents to know about your trouble here? A. Not until I am sentenced.

"Q. Is there anything further you wish to say Smith, before sentence is imposed in your case?

"Smith: Well, your Honor, I would like for you to take under consideration that there was no viciousness in connection with this abduction of this boy. We were nice to him and did not harm him any way and we wanted transportation and did not harm him any at all.

"Q. You held him up at the point of a gun to make him bring you up here? A. Yes, sir.

"Q. You are now under sentence in Florida for five years? That case is on appeal? A. Yes, sir. That is right.

"The Court: Nunn, what were you in jail for?

"Nunn: For transporting liquor.

"Q. Is there anything further you wish to say? A. No, sir.

"The Court: Jenks, is there anything further you wish to say?

"Jenks: No, sir.

"The Court: Mr. Lill has gone over this case with me. Smith, in your case, sentence of the law that you be in the custody of the Attorney General for a period of thirty years.

"Richard Dale Nunn, in your case sentence of the law you be in custody of the Attorney General for fifteen years.

"Robert Peter Jenks, sentence of the law you be in the custody of the Attorney General for fifteen years. All you boys under the law are eligible for parole when you serve these sentences. I don't know whether you should be paroled. You have shown an indication that you are going to spend your lives in crime. It looks like you have dedicated your lives to crime. If you are ever going to change it is time now. You can't escape this punishment and under the circumstances I think it is moderate."

scraped his side when breaking out of jail in Florida. Pictures of Smith that were taken prior to and during this critical period were introduced in evidence. The transcript of the proceedings in Court at the time Smith was sentenced exhibits the mental alertness of Smith. In this connection, the Government introduced a preliminary physical examination dated November 22, 1949, through a medical technical assistant at the Atlanta penitentiary. This report indicates that Smith was in good physical condition at the time he entered the Atlanta penitentiary on that date. The report of medical history dated December 1, 1949, prepared and signed by Smith, was introduced and made a part of the record, and is significant in that it states that Smith had no "accidents or injuries".

Insofar as Smith's physical and mental condition is concerned, his evidence, at best, shows that he did not have much sleep and did not have much food from November 12, 1949, until November 18, 1949. Smith further testified FBI Agent John Lill promised to make a "deal with him" if he would plead guilty and, further, that the FBI agent told him what to tell the Court when he was brought before the Court for sentencing. All such testimony was specifically denied by FBI Agent Lill. It further appeared that Smith was taken, prior to the time he entered his plea of guilty and made the several waivers in open court, to the office of the then Assistant United States Attorney Hartwell Davis, that said attorney at that time fully explained to Smith what he was being charged with and what his rights were with respect to venue, indictment, the right to an attorney, and possible sentence.

As to that portion of the motion relating to the conversation that FBI Agent John Lill had with Judge Kennamer in Judge Kennamer's Chambers outside of the hearing of the movant and prior to the time the plea of guilty was entered, it appears from the evidence that Agent Lill told Judge Kennamer (1) that Smith admitted to Lill an armed robbery or burglary in the State of Florida; (2) that Smith admitted to Lill he shot at the officer's car that pursued him immediately after the robbery; (3) that Smith admitted to Lill participating in the burglary of a Mr. Lemmon's home; (4) that Smith admitted to Lill that he stole and transported Spearman's automobile across the State line; (5) that Smith admitted to Lill that he transported the firearm across the State line; (6) that Smith had been convicted and sentenced to twenty-five years in the State of Florida for burglary and armed robbery and that an appeal in said matter was then pending; and (7) that Smith at the time he shot at the officer's car admitted to Agent Lill that he shot Florida Deputy Sheriff Bill Gilbert.

From the evidence of the movant on cross-examination, from the testimony of FBI Agent John Lill, from the testimony of various other witnesses, including the victim of the kidnapping, Alan W. Spearman, Jr., and Deputy Sheriff Bill Gilbert, it appears that each and everything that Agent Lill told Judge Kennamer on this occasion was true and correct.

It further appears from the evidence, including testimony of movant Smith, that Smith, together with witness Nunn and witness Jenks, on November 14, 1949, approached the automobile occupied by Alan W. Spearman, Jr., in the State of Florida, and, with a shotgun, took the car and Spearman, and proceeded in the automobile into the State of Alabama. Nunn and Jenks, movant's codefendants in the kidnapping case and witnesses for the movant on this hearing, and Spearman, victim in the kidnapping case, all testified that the three codefendants approached Spearman; that the gun was pointed by one of them at Spearman; that two of them sat on the back seat and one sat on the front seat driving with Spearman; that the gun was in the back seat of the automobile. Spearman testified unequivocally that he was, by the use

of the gun, forced to relinquish his automobile to Smith and his two co-defendants in the State of Florida, and was forceably taken into the State of Alabama and released in Coffee County, Alabama, without having been harmed.

The third and only other issue in the case relates to the prosecution being by information instead of indictment. The pertinent part of the information to which the plea of guilty was entered by movant, read as follows:

"The United States Attorney charges:

"On or about November 14, 1949, Johnny Ray Smith, Richard Dale Nunn, and Robert Peter Jenks, did knowingly transport in interstate commerce from Calhoun County in the State of Florida, to Coffee County in the Middle District of Alabama, a person, to wit, Alan W. Spearman, Jr., who had been unlawfully seized, kidnapped, abducted, and carried away and held for the safe conduct of the three defendants from Calhoun County, Florida, to Coffee County, Alabama.

"/s/ Hartwell Davis
"Assistant United States Attorney"

It is movant's contention that the information charged an offense punishable by death and that under Rule 7(a) of the Federal Rules of Criminal Procedure said offense could only be prosecuted by indictment and the failure to do so left the Court without jurisdiction to sentence Smith on his plea to the information. In this connection, it should be noted that the Court was extremely careful in explaining to Smith the effect of the charge, and stated to Smith and his codefendants, "You each understand that under that charge you can be sent to the penitentiary for a long time, do you?" To this question the defendants answered, "Yes, sir." After the defendants had entered a plea but before the Court sentenced Smith, the Court explained further, "You, each of you, plead guilty to this information,

and you are aware of the fact that the Court could sentence you to life imprisonment?" To this, each defendant replied, "Yes, sir." Then it is also significant to note that at the time Smith entered his plea, he stated to the Court, prior to the time sentence was imposed, "Well, your Honor, I would like for you to take under consideration that there was no viciousness in connection with this abduction of this boy. We were nice to him and did not harm him any way and we wanted transportation and did not harm him any at all."

■ The Court, upon a consideration of all of the evidence in this case, finds that at the time the movant pleaded guilty to kidnapping and participated in the other proceedings on November 21, 1949, he was not suffering from any mental or physical disorder or condition which would render him incompetent or irresponsible; that he was not relying on any false or misleading statement which was alleged to have been made him by Federal Bureau of Investigation Agent Lill or by any one else; that there was, in fact, no false or misleading statement made to him by Agent Lill or any other person insofar as his case then pending was concerned, and that he entered his plea without having had any threats or promises made him and without being under any force or duress of any kind. The Court finds that his waivers and pleas were made by him voluntarily and with his eyes open.

■ A defendant may always properly waive his rights if this waiver is made with his eyes open and if the defendant knows what he is doing at the time of waiver. Woolard v. United States, 5 Cir., 178 F.2d 84.

■ The Court further finds that FBI Agent Lill and Judge Kennamer had a private conversation in the Judge's Chambers prior to the taking of the plea in violation of Rule 32(c) of the Federal Rules of Criminal Procedure; that during this conversation, Agent Lill told Judge Kennamer of various violations of law prior to the kidnapping of-

fense which the prisoner told him that he had committed; that is, the transportation of a stolen car from Geneva, Alabama, to Panama City, Florida, and back to Hacoda, Alabama; the assault of one Bill Gilbert with a shotgun with intent to murder him; burglary of a house, presumably of one Lemmon in Florida; and the interstate transportation of a firearm, presumably stolen from the said Lemmon home; that petitioner has failed to prove that he had not committed each of these said crimes, and that the preponderance of the evidence tends to show that he had actually committed all of these crimes at that time.

██ The Court further finds that the movant Smith was not prejudiced in any way by this technical violation of Rule 32(c). It certainly was not shown by the evidence presented on this hearing that the sentencing Court was prejudiced in any way by having the knowledge of those facts prior to the time the plea was entered. This technical violation of Rule 32(c) of the Federal Rules of Criminal Procedure may not now be invoked to set aside the sentence of movant, which in all respects appears just and proper. It is true that such information should ordinarily be disclosed to the Judge either in open court in the presence of the defendant or by proper presentence report submitted to the Court after a plea is entered and before pronouncement of sentence. Stephan v. United States, 6 Cir., 133 F.2d 87. However, the procedure followed in this case resulted in no harm or injury to Smith.

██ There is no question but that any person accused of an offense punishable by death may be proceeded against only by an indictment returned by a grand jury as specifically set out in Rule 7(a) of the Federal Rules of Criminal Procedure. There is a question as to whether or not this right is for the accused person's protection and may be waived. However, that need not be and is not decided in this opinion, since it clearly appears from the evidence in this case that the accused fully understood that he was not being prosecuted for an offense which was punishable by death. The Court further finds that Smith could legally and did consent to be proceeded against by information. No error appears in this respect and it does not appear that any relief is warranted as a result of this waiver. That such an offense as is charged by this information is not an offense punishable by the death penalty was decided and thoroughly discussed in the case of United States v. Parker, 3 Cir., 103 F.2d 857. A "harmed or unharmed" allegation in the presentment need not be alleged since "That is an allegation going only to the punishment, * * * the failure to include it would be at worst a 'variance,' and would not affect substantial rights' ". United States v. Parrino, 2 Cir., 180 F.2d 613, 615. In the case now before the Court, there was evidence presented and it is in the record that the victim Spearman was released unharmed and that the sentencing Court knew and understood that. The Court finds that the movant Smith was not charged, tried or sentenced for an offense punishable by death but was charged with and sentenced for an offense which carried a maximum sentence of life imprisonment.

In conclusion the Court finds that there was no manifest injustice caused movant by the imposition of the thirty year sentence imposed upon him by Judge Kennamer on November 21, 1949; that movant's sentence was not in violation of the due process clause of the Fifth Amendment, and that all constitutional rights of movant were adequately protected, and the sentence imposed upon movant was warranted.

It is therefore the Order and Judgment of the Court that movant is entitled to no relief under his amended motion and the said motion is hereby denied.

It is the further Order of the Court that the United States Marshal for this District, who now has custody of the movant Smith, return Smith to the designated place of confinement to serve the remaining portion of his sentence.