## SMITH *v.* UNITED STATES.

No. 90.   Argued January 21, 1959.—Decided June 8, 1959.

*William B. Moore, Jr.* argued the cause for petitioner. With him on the brief was *Marion Rushton.*

*Leon Silverman* argued the cause for the United States. On the brief were *Solicitor General Rankin, Assistant Attorney General Anderson, Beatrice Rosenberg* and *Kirby W. Patterson.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The petitioner seeks relief under 28 U. S. C. § 2255 from his conviction and sentence for violation of the Federal Kidnapping Act, 18 U. S. C. § 1201. Briefly, the kidnapping charge grew out of the following facts: Petitioner, a young man of twenty-six, and two seventeen-year-old boys, while in custody under state charges, escaped from a Florida jail on November 12, 1949. They were almost immediately pursued by men and bloodhounds through swampy everglade terrain. On November 14, 1949, they allegedly pre-empted an automobile and seized its owner forcing him to accompany them into the State of Alabama where they released the victim without harming him and subsequently abandoned the car. On November 18, 1949, the defendants were arrested by federal authorities in a hiding place under the floor of a building. Petitioner claimed that he was weak from lack of food and sleep and that his back had been injured in the course of the escape. The defendants were taken promptly before the United States Commissioner where they were charged with transporting a kidnapping victim across state boundaries.

On the following day, petitioner was interviewed at length by a government agent concerning both the kidnapping offense and his prior record. There was a conflict in the evidence concerning what transpired at this interview. The petitioner testified that he was promised leniency if he would plead guilty and that he was assured

that the juveniles would be given no more than four years' imprisonment if they pleaded guilty. The Government offered evidence to the effect that no promises were made. In any event, on Monday morning, November 21, 1949, petitioner and his codefendants were brought by the government agent to the office of the United States Attorney where a discussion ensued concerning waivers of indictments, counsel, and venue, and pleas of guilty to an information which the United States Attorney proposed to file.

While that conference was proceeding, the government agent who had previously interviewed petitioner had a private out-of-court audience and conference with the district judge in his chambers at which, in the absence of the defendants, he discussed the contemplated proceedings with the judge and informed him about the alleged kidnapping offense and other alleged crimes of petitioner. Soon thereafter, and, in the words of the Court of Appeals, "[a]fter the judge's mind had become thoroughly conditioned by this interview with, and the disclosures made to him by, [the government agent] regarding the defendants," there followed in open court "a stilted and formal colloquy consisting of brief and didactic statements by the judge" that the defendants could have a lawyer if they wished and could have their cases submitted to a grand jury. 238 F. 2d 925, 927, n. 5. The defendants, including petitioner, stated that they did not wish to have an attorney and were willing to waive indictment and be prosecuted under an information to be filed by the prosecutor. The information was immediately filed and the defendants waived counsel and venue.[1] They then imme-

---

[1] 18 U. S. C. § 3235 provides:

"The trial of offenses punishable with death shall be had in the county where the offense was committed, where that can be done without great inconvenience."

diately pleaded guilty to the information and stated that they wanted to be sentenced promptly before their parents knew of their predicaments. The judge then sentenced petitioner to thirty years in the penitentiary and the two seventeen-year-old accomplices to fifteen years each. No appeals were taken.[2]

Because of these precipitous and telescoped proceedings, the case has had a long and troublesome history in the Court of Appeals for the Fifth Circuit. It has been three times before that court. Soon after the sentence was imposed, petitioner filed his initial application under § 2255 to vacate the judgment. The application was denied without a hearing and no appeal was taken. In March 1954 petitioner filed a second, similar application which was likewise denied without a hearing, but on appeal the Court of Appeals determined that petitioner's allegations required a hearing. *Smith* v. *United States,* 223 F. 2d 750. After the hearing was held, the District Court again dismissed the application. 137 F. Supp. 222. Again the Court of Appeals reversed, this time finding that petitioner had been deprived of due process by the summary manner in which the Government had pro-

---

The Federal Rules of Criminal Procedure, Rule 18, provide:

"Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed, but if the district consists of two or more divisions the trial shall be had in a division in which the offense was committed."

The offense of which petitioner was accused was committed in Dothan, Alabama, which was within the Southern Division of the District Court. The proceedings against petitioner were held in Montgomery, Alabama, which is located in another county in Alabama in the Northern Division of that court.

[2] This left petitioner with a substantial sentence still pending in Florida under the charge for which he was in custody when he escaped. In addition, petitioner was apparently still in jeopardy of state prosecution for escaping.

ceeded against him.[3]  *Smith* v. *United States,* 238 F.
2d 925, 930.  First the court remanded the cause "with
directions to grant the motion, to set aside the conviction
and sentence, and to proceed further and not incon-
sistently" with the opinion.  238 F. 2d, at 931.  On
rehearing, however, the court modified its directions as
follows:

> "The judgment is reversed and the cause is
> remanded with directions to set aside the conviction
> and sentence and to proceed further and not incon-
> sistently herewith, including, if the district judge is
> of the opinion that the ends of justice require it,
> permitting the defendant to withdraw his waiver of
> counsel and his plea of guilty and to stand trial."
> 240 F. 2d 347.

On the remanded proceedings, the District Court resen-
tenced petitioner, but refused him permission to with-
draw his waivers and guilty plea.  The Court of Appeals

[3] The Court of Appeals stated, at 238 F. 2d 930:

"When it comes to the controlling question, however, which the
motion presents, whether under the undisputed facts the defendant
was denied due process in the taking of waivers and plea, and the
imposition of sentence the matter stands quite differently, and because
it is clear that it was not accorded to him, the judgment appealed
from must be reversed.

"This is so, because, considering the inordinate speed, the incon-
tinent haste, with which the defendants were brought up for hearing
and the trial moved on apace, the fact that the government prose-
cuting agent and the district judge, before the defendant had made
any waivers or pleaded in the cause, conferred privately in chambers
with regard to defendants' guilt and the punishment to be imposed
therefor, in connection with both what was said and done and what
was left unsaid and undone by the judge in taking the waivers and
the plea and sentencing the defendant, we are left in no doubt that
the movant was not accorded, but was denied, due process, and that
the judgment against, and sentence imposed upon him may not
stand."

affirmed this decision, *Smith* v. *United States,* 250 F.
2d 842, over the dissent of Judge Rives who believed that
the court's action in setting aside the conviction on justi-
fied due process grounds necessarily required the vacation
of the plea of guilty.   250 F. 2d 842, 843–844.   He also
dissented on the ground that kidnapping under 18 U. S. C.
§ 1201 is a capital offense, which, pursuant to the Federal
Rules of Criminal Procedure, Rule 7 (a), requires prose-
cution by indictment regardless of a defendant's waiver,
and that prosecution by information in the instant pro-
ceeding had not conferred on the convicting court juris-
diction to try petitioner's case.   We granted certiorari
because of the serious due process and statutory questions
raised.   357 U. S. 904.   But in view of our belief that
the indictment point is dispositive of the case in peti-
tioner's favor, we find it unnecessary to reach the due
process questions presented.

The precise question at issue, therefore, is whether peti-
tioner's alleged violation of the Kidnapping Act had to
be prosecuted by indictment.   A number of statutory
and constitutional provisions and the information charg-
ing petitioner are relevant to this inquiry.   The Fifth
Amendment provides in part that "[n]o person shall be
held to answer for a capital, or otherwise infamous crime,
unless on a presentment or indictment of a Grand Jury,"
except in cases not pertinent here.   But the command of
the Amendment may be waived under certain circum-
stances,[4] and the Federal Rules of Criminal Procedure,
Rule 7 (a), provide as follows:

> "An offense which *may* be punished by death *shall
> be* prosecuted by indictment.   An offense which may
> be punished by imprisonment for a term exceeding
> one year or at hard labor shall be prosecuted by

---

[4] *Barkman* v. *Sanford,* 162 F. 2d 592; *United States* v. *Gill,* 55 F.
2d 399.

indictment or, if indictment is waived, it may be prosecuted by information. Any other offense may be prosecuted by indictment or by information. An information may be filed without leave of court." (Emphasis added.)

These enactments become particularly pertinent in view of the language of 18 U. S. C. § 1201, the statute under which petitioner was convicted, which provides in part that:

> "(a) Whoever knowingly transports in interstate . . . commerce, any person who has been unlawfully . . . kidnapped . . . shall be punished (1) by death if the kidnapped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed."

The charging part of the information against petitioner stated that he "did knowingly transport in interstate commerce . . . a person, to wit, Alan W. Spearman, Jr., who had been unlawfully seized, kidnapped, abducted, and carried away and held for the safe conduct of the three defendants . . . ." The charge did not state whether Spearman was released harmed or unharmed.

It has been held by two Courts of Appeals that indictments similar in terms to the charge here were sufficient to support capital punishments despite the absence of allegations that the kidnapping victims were released harmed. *United States* v. *Parrino*, 180 F. 2d 613; *Robinson* v. *United States*, 144 F. 2d 392. Cf. *United States* v. *Parker*, 103 F. 2d 857. Petitioner contends that these holdings dispose of his case because they make clear that the statute creates a single offense of kidnapping which *may* be punished by death if the prosecution, at trial, shows that the victim was released in a harmed condi-

8

tion.   The Government claims, however, that whether a specific kidnapping constitutes a capital offense requires examination of the evidence to determine whether the victim was released harmed or unharmed; in other words, that the statute creates two offenses: kidnapping without harm, which is punishable by a term of years, and kidnapping with harm, which is punishable by death. Further, the Government contends that the mere filing of an information by the United States Attorney eliminated the capital element of the crime.

The Courts of Appeals which have been concerned with the statute have uniformly construed it to create the single offense of transporting a kidnapping victim across state lines. We agree with this construction. Under the statute, that offense is punishable by death if certain proof is introduced at trial. When an accused is charged, as here, with transporting a kidnapping victim across state lines, he is charged and will be tried for an offense which *may* be punished by death. Although the imposition of that penalty will depend on whether sufficient proof of harm is introduced during the trial, that circumstance does not alter the fact that the offense itself is one which *may* be punished by death and thus must be prosecuted by indictment. In other words, when the offense as charged is sufficiently broad to justify a capital verdict, the trial must proceed on that basis, even though the evidence later establishes that such a verdict cannot be sustained because the victim was released unharmed. It is neither procedurally correct nor practical to await the conclusion of the evidence to determine whether the accused is being prosecuted for a capital offense. For the trial judge must make informed decisions prior to trial which will depend on whether the offense may be so punished. He must decide, among other things, whether the accused has the right to obtain a list of veniremen and government witnesses, 18 U. S. C. § 3432,

whether venue is properly set, 18 U. S. C. § 3235, whether the accused has the benefit of twenty rather than ten peremptory challenges, Federal Rules of Criminal Procedure, Rule 24 (b), whether indictment rather than information is necessary, Federal Rules of Criminal Procedure, Rule 7, and who may bail the accused. 18 U. S. C. § 3141.

This Court has, in recent years, upheld many convictions in the face of questions concerning the sufficiency of the charging papers. Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused. *E. g., Hagner* v. *United States,* 285 U. S. 427; *Williams* v. *United States,* 341 U. S. 97; *United States* v. *Debrow,* 346 U. S. 374. This has been a salutary development in the criminal law. But the substantial safeguards to those charged with serious crimes cannot be eradicated under the guise of technical departures from the rules. The use of indictments in all cases warranting serious punishment was the rule at common law. *Ex parte Wilson,* 114 U. S. 417; *Mackin* v. *United States,* 117 U. S. 348. The Fifth Amendment made the rule mandatory in federal prosecutions in recognition of the fact that the intervention of a grand jury was a substantial safeguard against oppressive and arbitrary proceedings. *Ex parte Bain,* 121 U. S. 1; *Hale* v. *Henkel,* 201 U. S. 43; *Toth* v. *Quarles,* 350 U. S. 11, 16. Rule 7 (a) recognizes that this safeguard may be waived, but only in those proceedings which are noncapital. To construe the provisions of the Rule loosely to permit the use of informations where, as here, the charge states a capital offense, would do violence to that Rule and would make vulnerable to summary treatment those accused of one of our most serious crimes. We cannot do this in view of the traditional canon of construction which calls for the strict interpretation of criminal statutes and rules in favor of defendants where substantial rights are involved.

It is urged that this result will fail to protect substantial rights of defendants in other cases. We see no merit in that contention, particularly where the opposite conclusion would deprive defendants of the protection of a grand jury indictment as required by the Constitution and Rule 7 (a). Under our holding, there is no reason to believe that a defendant in a case such as this would be surprised on his trial by any possible trickery of the prosecution. If there is no allegation of harm in the indictment, the discovery proceedings afforded in capital cases and the provisions of Rule 7 (f) authorizing bills of particulars will enable the defendant to acquaint himself with the scope of the trial and the criminal transaction to be proved. It is further suggested that it might be in the interests of the defendant to have the benefit of the speed that can be mustered by the filing of an information instead of an indictment. While justice should be administered with dispatch, the essential ingredient is orderly expedition and not mere speed. It is well to note that in this very case the inordinate speed that was generated through the filing of the information caused many of the difficulties which led the court below to conclude that petitioner had been deprived of due process of law. Moreover, if, contrary to sound judicial administration in our federal system, arrest and incarceration are followed by inordinate delay prior to indictment, a defendant may, under appropriate circumstances, invoke the protection of the Sixth Amendment.

Under our view of Rule 7 (a), the United States Attorney did not have authority to file an information in this case and the waivers made by petitioner were not binding and did not confer power on the convicting court to hear the case. Cf. *Ex parte Wilson, supra.* The judgment and conviction are reversed and the case is remanded to the District Court with instructions to dismiss the information.

*It is so ordered.*

Mr. Justice Clark, with whom Mr. Justice Harlan and Mr. Justice Stewart join, concurring in part and dissenting in part.

Johnny Ray Smith, presently an inmate of Alcatraz, began his career of crime as a juvenile. Soon thereafter he escaped from the Federal Correctional Institution at Tallahassee, Florida. At age 26 he had twice been convicted of violations of the Dyer Act, 18 U. S. C. § 2312, was serving 25 years in a Florida prison for armed robbery, and had seriously wounded an officer while fleeing from the scene of the latter crime. He, with two juvenile inmates, escaped the Florida prison, burglarized a house, stole a shotgun, and allegedly kidnaped Alan W. Spearman, Jr., at shotgun point, while the latter was sitting in his company's automobile. They forced Spearman to accompany them in the car across the Florida line into Alabama. There, after the release of Spearman, they abandoned the car and were later arrested in their hiding place under a building. Each admitted guilt and asked for a speedy trial. Smith advised the United States Commissioner, the Federal Bureau of Investigation, the prosecutor and the district judge that he did not want a lawyer; he waived indictment and venue, pleaded guilty to an information charging kidnaping and threw himself on the mercy of the court in these words:

> "Well, your Honor, I would like for you to take under consideration that there was no viciousness in connection with this abduction of this boy. We were nice to him and did not harm him any way and we wanted transportation and did not harm him any at all."

Smith received a 30-year sentence; the juveniles 15 years each. He was sent to Alcatraz and from there has prosecuted a series of motions under 28 U. S. C. § 2255, appearing twice to testify in the District Court of Florida.

The Court of Appeals has considered his case three times and he is now here attacking his sentence on two points: (1) Can a kidnaping charge, where the kidnaped person is released unharmed, be prosecuted by information; and, (2) Is due process violated when the trial judge, before a guilty plea is entered and outside the presence of the accused or his counsel, confers with an FBI agent concerning the facts of the charge and the prior record of the accused? The Court, without reaching the second question, says that kidnaping can be prosecuted only by indictment and that a charge in the general words of the statute is sufficient.

In attempting to do what it believes to be a great right the Court in reality does a great wrong to the administration of justice. The most serious result is that the Court's procedure allows the United States Attorney to secure an indictment for a capital offense without the grand jury's knowing that he is doing so. This deprives kidnaping defendants of the very protection of the Fifth Amendment that the Court professes to be enforcing. The Court also clouds the meaning of Rule 7 (b) as to waiver of indictment by carving noncapital kidnaping offenses out of its specific permissive terms.

Both the Fifth Amendment and Rule 7 (a) require capital offenses to be prosecuted by indictment. Kidnaping is not such an offense unless "the kidnaped person has not been liberated unharmed." 18 U. S. C. § 1201 (a). It is reasonable to say that before one can be prosecuted for the capital offense he must be charged with it, namely, kidnaping where "the kidnaped person has not been liberated unharmed." To do otherwise does not place him on notice of the offense for which he is to be tried. The Court, however, holds that § 1201 (a) creates a "single offense . . . [which] is punishable by death if certain proof is introduced at trial." It reasons that this makes every kidnaping a capital case requiring

grand jury action. But it does not require that the grand jury consider whether "the kidnaped person has not been liberated unharmed" and so allege in the indictment. Thus the grand jury is deprived of any knowledge of the element of the offense that makes it capital. Hence a grand jury in complete ignorance of the facts as to harm suffered by the victim at the time of release is required to return an indictment which will support the death penalty if proof of such harm is shown at the trial. This puts the law as to capital cases into the hands of the prosecutor, not the grand jury, where both the Fifth Amendment and Rule 7 (a) have lodged it. Nor does it strengthen the grand jury, to use the words of the Court, as a "substantial safeguard against oppressive and arbitrary proceedings." On the contrary, the Court's reference to discovery proceedings after indictment as a means for acquainting a defendant "with the scope of the trial and the criminal transaction to be proved" clearly shows the fallacy of its position. The grand jury should have this information before it returns a capital charge, otherwise, none should exist. under the indictment. By this reasoning, the Court deprives the defendant of the safeguard of proper grand jury proceedings as required by the Constitution in capital cases.

Moreover, as the Court says, "[i]t is neither procedurally correct nor practical to await the conclusion of the evidence to determine whether the accused is being prosecuted for a capital offense." Despite this language, the opinion requires just that since it does not compel the indictment to charge "a capital offense." I would require capital kidnaping cases to be prosecuted by indictment charging specifically that the kidnaped person was not liberated unharmed.

Turning to the procedural point under Rule 7 (a) and (b) we should remember it was this Court that adopted these Rules of Criminal Procedure, certified them to the

14

Congress, which added its sanction, and then promulgated them. They are simple and clear. Rule 7 (a) provides that an offense "which may" be punished by death must begin by indictment, while a noncapital offense may be prosecuted by information, if indictment is waived. Rule 7 (b) repeats that an offense "which may" receive a sentence for a term of years "may be" begun by information "if the defendant, after he has been advised of the nature of the charge and of his rights, waives in open court prosecution by indictment." In filing the information under the Kidnaping Act, the Government forecloses itself from seeking the death penalty. The Fifth Amendment, as well as Rule 7 (a), would prevent it from reneging on this bargain. The only possible sentence would, therefore, be one for a term of years. Moreover, Smith knew this full well, as is shown by his own testimony Not only had the United States Attorney so advised but the United States Commissioner and the district judge had clearly told Smith of the law in the matter. His request at sentencing points up his understanding thereof. The record also indicates that the requirements of Rule 7 (b) were scrupulously followed.

The Court, however, superimposes a new rule in kidnaping cases by requiring that they be begun only by indictment. This deprives such defendants not only of the beneficent provisions of Rule 7 (b) but subjects them to greater jeopardy in that the United States Attorney may insist on the death penalty at trial. This leaves open for play all of the evils that flesh is heir to, including the ambitions or disfavor of the prosecutor, the animosity of the victim or his malingerings from the kidnaping as well as other postindictment speculations. In rural districts where the grand jury only meets twice a year it would also place considerable hardship on a

defendant waiting for a grand jury to be empaneled.[1] He receives no credit for the time so served and puts the Federal Government to the expense of incarceration in the local jail on a per diem basis. Nor would the calling of a special grand jury solve the problem. It would not only be very expensive to the Government but burdensome to those called to serve, likewise taking the time of the court from other pressing matters, either in its own district or in others that suffer from congested dockets. On the other hand, following Rule 7 (b) would fully protect society. The defendant would be on notice of the charge against him and would receive the full enjoyment of all of his rights.[2] And, finally, the prosecutor would not be able, at his whim, to superinduce the death penalty on an otherwise noncapital case. In short, justice would be done.

It is true that three Courts of Appeals have passed on this statute. However, none of those cases is dispositive of the issue here. In *Robinson* v. *United States,* 144 F. 2d 392, 396, the indictment alleged that the accused did "beat, injure, bruise and harm [Mrs. Stoll] . . . and did not liberate her unharmed." It is, therefore, entirely inapposite since the indictment specifically alleged a capital offense. *United States* v. *Parker,* 103 F. 2d 857, in

---

[1] The Court says that "a defendant may, under appropriate circumstances, invoke the protection of the Sixth Amendment" where "arrest and incarceration are followed by inordinate delay prior to indictment . . . ." Such has never been the case heretofore where capital cases are held awaiting the statutory meeting of the next grand jury. This strange doctrine can only cause additional confusion in the effective enforcement of the kidnaping statute.

[2] The Court in holding that proceeding by information "would deprive defendants of the protection of a grand jury indictment as required by the Constitution and Rule 7 (a)," overlooks the fact that neither the Constitution nor that Rule requires kidnaping to be charged by indictment where the victim is released unharmed.

construing the then § 40 of the Judicial Code requiring trial of capital cases to be "had in the county where the offense was committed, where that can be done without great inconvenience," only decided that the application for change of venue was addressed to the sound discretion of the court, which "was not abused." It specifically held that "[w]hether such averments [that the victim had been released in a harmed condition] were necessary [in the indictment] to support a demand for the imposition of the death penalty we need not decide . . . ." *Id.,* at 861. The court concluded that "since the evidence taken at the trial established that he was liberated . . . in a sound and unharmed condition," *ibid.,* the case, in any event, was not one in which the death penalty could be imposed. The last case mentioned by the majority is *United States* v. *Parrino,* 180 F. 2d 613. That case involved the statute of limitations and the issue involved here was not, as the court said, "relevant to . . . whether the second indictment was found in time." *Id.,* at 615. The Government contended that if the case was "capital" the indictment might be returned at any time. The court held that there was no information in the record as to the condition of the victim at the time of his release. Although it agreed with the Government "that it was not necessary to allege that the victim was not released 'unharmed' in order that the jury might recommend the death penalty," it held that "the accused has to be adequately advised of it [released harmed], since the jury must pass upon it, [and that] it will be enough if he gets the information in season from any source." *Ibid.* Certainly the case is not dispositive of the issue here. In fact it supports the proposition that "the accused must be adequately advised . . . in season" if the Government claims the victim was released "harmed." I say that "adequately advised in season" would be certain only if

such an allegation was made in the indictment. Whether from a technical standpoint that makes two offenses of the crime of "kidnaping" is, therefore, not material. In my view, it does create two such offenses, (1) where the kidnaped person has not been released unharmed, and (2) where he has been liberated unharmed. In either event we should follow the mandate of the Fifth Amendment and Rule 7 and under our power of supervision over federal courts require in the future such procedural safeguards as are outlined herein.

This brings me to the second contention. I shall discuss the facts briefly. The "inordinate speed" which the Court says was present here was not generated by the Government but by the petitioner himself. The record clearly shows his anxiety to have the case concluded and fails to indicate any objection on his part to the immediate imposition of sentence. The disposition of cases on information and plea in four to five days, as occurred here, is normal in the federal system. I therefore put no credence in this claim. However, the record does indicate that at the instance of an Assistant United States Attorney a Special Agent of the Federal Bureau of Investigation called upon the trial judge in his chambers and talked at some length about Smith's background as well as his connection with the kidnaping. This was before Smith had signed any waivers or entered any plea. Neither Smith nor any one representing him was present at the interview. The record shows this contact not to have been covertly made, for at the time of sentence the trial judge in open court told Smith that it had occurred. I do not reach the due process contention, for it appears to me that our duty of supervision over the administration of justice in the federal courts, *McNabb* v. *United States*, 318 U. S. 332 (1943), requires reversal because of this interview. In a criminal case, such a private conference

must be deemed presumptively prejudicial where, in violation of Fed. Rules Crim. Proc., 32 (c)(1),[3] it was conducted prior to the plea.

For these reasons I would reverse the judgment with instructions that Smith be allowed to withdraw his guilty plea and stand trial on the information.

---

[3] Rule 32 (c)(1), Fed. Rules Crim. Proc., provides:

"(c) Presentence Investigation

"(1) *When Made*. The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty."