UNITED STATES of America, Plaintiff-Appellee,

v.

George CHRISOS, Defendant-Appellant.

No. 13177.

United States Court of Appeals Seventh Circuit.

June 7, 1961.

Bernard J. Mellman, Morris A. Shenker, St. Louis, Mo., for appellant.

James B. Moses, Asst. U. S. Atty., C. M. Raemer, U. S. Atty., East St. Louis, Ill., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.

HASTINGS, Chief Judge.

Defendant George Chrisos was convicted in a trial before the court without a jury for a violation of the provisions of

Title 18 U.S.C.A. § 2422.[1] He appeals from this judgment of conviction.

The trial court made the following findings as to Chrisos' conduct and guilt:

"The evidence clearly shows and the Court finds that Denise Shayne Berry was a prostitute; that she was known by various aliases, one of which was Joyce Allen; that she and [defendant and a third party] met prior to her trip to Terre Haute, Indiana, and that both [defendant and the third party] transported her to various cities in the State of Illinois for the purpose of prostitution; that the defendant George Chrisos gave her money with which to purchase a railroad ticket to go from East St. Louis, Illinois, to Terre Haute, Indiana; that defendant Chrisos, in fact, took her to a taxi stand in East St. Louis, Illinois, from whence she departed to Terre Haute, Indiana, to work as a prostitute; that she did go to and work in Terre Haute, Indiana, as a prostitute. The evidence establishes that the relationship of prostitute and panderer existed between the girl and the defendant George Chrisos.

\* \* \* \* \* \*

"The Government proved beyond a reasonable doubt that Denise Shayne Berry went from East St. Louis, Illinois, to Terre Haute, Indiana, as charged in the indictment, and that she did so because of the defendant George Chrisos' express desire and inducement. \* \* \* The evidence proves beyond a reasonable doubt that the defendant George Chrisos induced her to go to Terre Haute for the purpose of prostitution as charged in the indictment and furnished the money therefor."

Defendant makes no contention that such findings are not supported by sufficient evidence.

The Government's case was largely based upon the testimony of the prosecuting witness, Denise Shayne Berry. Her story of defendant's participation in preparing and arranging for her trip to Terre Haute was in sharp conflict with defendant's version. Defendant strongly attacked the veracity and credibility of the prosecuting witness by an examination of her background, which most charitably described, was unsavory. In these circumstances, the defendant contends it was reversible error for the trial court to read and examine a presentence report compiled by federal probation officers dealing with the witness's background and character. Defendant argues that reading this report must have unfairly swayed the trial judge in his assessment of the credibility of the prosecuting witness. This report came into the hands of the court after the prosecuting witness had been found guilty *in a separate case* in which she was charged with unlawfully transporting a forged check in interstate commerce. The report was filed with the court while the instant case was under advisement.

Rule 32(c) (1), F.R.Cr.P., 18 U.S.C.A., which deals with pre-sentence reports, states:

"The probation service of the court shall make a presentence in-

---

1. "§ 2422. Coercion or enticement of female

"Whoever knowingly persuades, induces, entices, or coerces any woman or girl to go from one place to another in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose on the part of such person that such woman or girl shall engage in the practice of prostitution or debauchery, or [for] any other immoral practice, whether with or without her consent, and thereby knowingly causes such woman or girl to go and to be carried or transported as a passenger upon the line or route of any common carrier or carriers in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, shall be fined not more than $5,000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 812."

vestigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty."

In a recent concurring opinion, Mr. Justice Clark in Smith v. United States, 1959, 360 U.S. 1, 11, 79 S.Ct. 991, 1001, 3 L.Ed.2d 1041, stated that the presentation to the trial court of a pre-sentence report concerning a *defendant* "must be deemed presumptively prejudicial where, in violation of Fed.Rules Crim.Proc., 32 (c) (1), it was conducted prior to the plea."

■ Defendant attempts to extend the reasoning of this concurring opinion to a situation where, as here, a pre-sentence report dealing with a *witness* came into the possession of the trial court pursuant to its responsibilities in a totally separate case. We have been cited no cases which state that, as a matter of law, such inspection and examination must be deemed presumptively prejudicial. This rule is properly limited to a report dealing with the defendant, for a premature presentation there might influence the controlling determination of the guilt of the defendant. Further, defendant's attempt to show some semblance of prejudice in fact was totally unsuccessful. We have carefully read defendant's argument before the trial court and in his briefs in this court and fail to find any possible connection between the facts he states might hypothetically be contained in the confidential report and the trial court's assessment of the veracity of the prosecuting wit-

ness. Since there was no showing of any actual prejudice, we shall not presume as a matter of law that it did exist.

■ Defendant next contends that the provisions of the "Jencks Act," 18 U.S.C.A. § 3500, were not complied with in the case below because the court failed to order production of a certain FBI report. During the course of cross-examination of the prosecuting witness, it was revealed that she had made certain statements to agents of the Federal Bureau of Investigation assigned to the case. Her testimony was ambiguous as to the number of oral and written statements she had made.[2] Defendant's counsel properly moved for the production of all statements made by this witness to any agency of the United States. The trial court then noted, "Let the record show the handing of such statements to counsel for the defense by the United States Attorney." Defense counsel next moved for production of any memorandum made by any FBI agent as a result of conversations with the prosecuting witness. The government attorney replied that "[t]o my knowledge, that's the only statement we have * * * taken from this witness referring to this case."

In order to determine whether or not the prosecuting witness had made subsequent statements to the FBI, defense counsel, *at the suggestion of government counsel,* called Agent Hafen who was in charge of the investigation of the case. This conversation clearly indicates that on one occasion a statement signed by the prosecuting witness was taken by Agent Hafen. *This statement, or a copy of it, was the one furnished defense counsel pursuant to his "Jencks" request, supra.* The testimony further indicates

---

2. "Q. [by defense counsel] How many statements did you make to them? A. [by the prosecuting witness] I think two altogether.

"Q. How many statements have you made? A. Two.

"Q. You made a statement to the FBI about this matter, did you not? A. Yes.

"Q. When? A. I can't give you the exact date.

"Q. Can you give us the approximate date? A. I think the 9th of September —December, I mean.

"Q. 9th of December? A. I think that's about the day.

"Q. Since that time, you have made no statement to any FBI agent about this case? A. Oral or signed?

"Q. Either? A. I may have discussed it.

"Q. But you don't know? A. I could not be positive."

that an FBI report was made by Agent Hafen based on this discussion, but that it contained only a copy of the written statement and, in addition, a description of the prosecuting witness and the location of the discussion.[3] Thus it is apparent from the extrinsic testimony that there was but a single statement of the prosecuting witness and that it had already been furnished to counsel. The trial court confirmed this fact when it stated during the argument on defendant's motion for a new trial that "the testimony shows there was no other statement." This conclusion is reaffirmed by the fact that defense counsel made no request for additional statements at the conclusion of the testimony of the agent who had been called to determine if "any other statements" had been made. On the contrary, the prosecuting witness was immediately recalled, and defense counsel continued his cross-examination.

If the testimony had revealed that additional statements had been made by the prosecuting witness or that agents' memoranda had been compiled on the basis of additional conversations, then production should have been ordered if the document met the requirements of a "statement" within 18 U.S.C.A. § 3500 (e). Such further determination was not necessary here since the single statement that existed was already in the hands of the defense.

In its proper use of extrinsic testimony to determine the existence of additional statements, the trial court has here complied with the statutory mandate of Section 3500 which, as the Supreme Court has said, "implies the duty in the trial judge affirmatively to administer the statute in such way as can best secure relevant and available evidence necessary to decide between the directly opposed interests protected by the statute—the interest of the government in safeguarding government papers from disclosure, and the interest of the accused in having the government produce 'statements' which the statute requires to be produced." Campbell v. United States, 1961, 365 U.S. 85, 95, 181 S.Ct. 421, 427, 5 L.Ed.2d 428.

The final three arguments of defendant can be treated summarily. Alleged improper cross-examination of defendant was not objected to by trial counsel. Our examination of the record indicates there was no "plain error" in this respect within the terms of Rule 52(b), F.R. Cr.P. The record discloses no indication that defendant was prejudicially limited in cross-examining the prosecuting witness. Finally, the court's general findings of guilt, in the absence of any request by defendant for special findings, are ample to support the court's verdict.

The judgment of the district court is Affirmed.

---

3. "Q. [by defense counsel] As a result of these discussions did you make a memorandum of what was said during those discussions? A. [by Agent Hafen] On the one occasion, yes.

"Q. Do you know what that one discussion was? A. The day we took the signed statement.

"Q. In addition to that, did you make any other memorandum of what was said during that conversation with her or these conversations with her? A. Not that I recall.

"Q. You prepared an official report for your office in Springfield, for the Springfield office? A. Yes, sir.

"Q. Was that report in respect to the conversations?

＊　　＊　　＊　　＊　　＊

"A. It was the statement she furnished to us.

"Q. Was that based on a verbal report? A. Yes, sir.

＊　　＊　　＊　　＊　　＊

"Q. Is there anything else in there about the discussion between yourself and Miss Berry? A. Pertaining to this case?

"Q. Yes. A. I believe that is all.

"Q. What is in that report concerning this case? A. State that again, please.

"Q. The only thing you did was copy off on a written report this written statement? A. Description of her in there in addition to the places, I believe.

"Q. That's all you stated? A. I believe so.

"Mr. Baker: That's all."