(No. 13504.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK SURACE, Plaintiff in Error.

*Opinion filed December 21, 1920—Rehearing denied Feb. 3, 1921.*

1. CRIMINAL LAW—*judgment cannot be reversed merely because defendant contradicts only witness for People.* The fact that only one witness testifies for the People and that the defendant, testifying in his own behalf, contradicts all the material parts of the testimony of that witness is not ground for reversing a judgment of conviction, provided the jury are warranted in believing the testimony of the People's witness.

2. SAME—*credibility of defendant as a witness.* The credibility of a defendant as a witness for himself must be tested by the usual rules applied to other witnesses when testifying, but his interest in the result of the trial is to be given due consideration.

3. SAME—*larceny—when possession of a stolen automobile is prima facie evidence of guilt.* Where not explained in a manner sufficient to, raise a reasonable doubt the possession of property recently stolen is *prima facie* evidence of guilt of larceny, and where a stolen automobile is concealed in a private garage, a person who is arrested with the key to the garage in his possession is sufficiently shown to be in possession of the garage and of the stolen car.

4. SAME—*meaning of the word "steal."* The word "steal" or "stealing," in common as well as in legal parlance, means the felonious taking and carrying away of the goods of another, and to "steal" a man's property is to take it from his custody with a felonious intention.

5. SAME—*when verdict for theft of motor vehicle is responsive to indictment.* Where a particular count in an indictment charges the larceny of an automobile, a verdict finding the defendant guilty of "stealing a motor vehicle" as charged in said count is sufficiently responsive to the indictment.

6. SAME—*when verdict of guilty of larceny is not invalid.* Under an indictment charging larceny, a verdict finding the defendant guilty of "stealing" the property as charged in the indictment is not invalid because the word "stealing" is not qualified by the word "felonious" and the words "taking and carrying away" are not used.

7. SAME—*correct instruction as to presumption of guilt from possession of stolen property.* In a trial for larceny an instruction is correct which states that the recent and unexplained possession of the stolen property by the defendant, if the evidence so shows, tends to establish his guilt and of itself is sufficient to authorize a conviction unless the inference of guilt thereby raised is overcome by other facts and circumstances in evidence, so as to raise in the minds of the jury a reasonable doubt of such guilt.

8. SAME—*when instruction as to effect of possession of stolen property is erroneous—harmless error.* In a trial for larceny an instruction that the possession of the stolen property soon after the commission of the offense is *prima facie* evidence of guilt is erroneous if it omits all reference to the effect of a satisfactory explanation of such possession, but such error is harmless where the evidence of guilt is very strong notwithstanding the defendant's explanation.

9. SAME—*argument is proper if based upon evidence.* Counsel both for the State and for the defendant must be allowed all proper latitude in their arguments, and no matter how much the court or opposing counsel may differ from the arguing attorney in his conclusions on the evidence, so long as he is arguing the evidence and drawing conclusions therefrom the court cannot interfere.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. ANTON T. ZEMAN, Judge, presiding.

MILES J. DEVINE, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, and WILLIAM SCOTT STEWART, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Frank Surace, was indicted and convicted in the criminal court of Cook county on the first count of an indictment charging him with the larceny of one automobile, the personal property of Irwin Meyer. The second count charged that he feloniously bought and aided in concealing the automobile, the goods and chattels of Irwin Meyer, for his own gain and to prevent the owner from again possessing his own property. Judgment and an indeterminate sentence were entered on the verdict, committing him to the State penitentiary at Joliet after motions for new trial and in arrest of judgment had been overruled. The record is now in this court for review on writ of error.

Only one witness was examined for the State. The plaintiff in error was himself his only witness. The facts admitted and testified to for the State by John Sheahy, a patrolman at the detective bureau in Chicago and who has been on the police force in that city for six years, are the following: On July 11, 1919, the automobile in question, a five-passenger Hudson car, Sport model, with red wheels and a blue body, as described by the officer, was stolen from the property at the corner of Michigan boulevard and Harrison street and was at that time the property of Irwin Meyer. The officer was present when plaintiff in error was arrested on July 19, 1919, at 5943 Eggleston avenue, Chicago, in Cook county, which is a private one-story frame garage built for two cars. In front of the garage is a residence. Officers McDonald and Mullen were also present at the time of his arrest. The three officers aforesaid had gone to this garage three days before, July 16, 1919, and had found the car in the garage, and also a Marmon automobile, after breaking the lock on the door and enter-

ing the garage.  They took the number of the car in question, J48238, the number of the machine, and 48238. the number on the motor, and after talking with the woman who owned the building and the garage relieved each other in watching, and watched the place three days and nights before anyone came to it.  Plaintiff in error came to the garage about a quarter to eight o'clock on the third night, Saturday, July 19, 1919, and was the only one who came to it.  They arrested him while he was trying to unlock the garage and get in.  They did not search him until they got down-town but had a talk with him in which he told them that nobody was with him when he put the car in the garage; that he took the two cars there himself and put them in there.  They found out that both cars were stolen. before plaintiff in error came to the garage.  They took him to the detective bureau and searched him.  They found on his person a check for a Buick car that was in a garage on Fourteenth street between Michigan and Wabash avenues.  The officers went there and got that car, which was also a stolen car.  They found in his pocket a package of dies, and also found in the garage at 5943 Eggleston avenue several sizes of dies for different makes of cars.  It is explained in the argument that these dies are contrivances used for the purpose of changing the numbers on automobiles, but no such explanation was given to the jury.  The dies found on plaintiff in error and in the garage were offered in evidence.  Plaintiff in error admitted to the officers that he stole the two cars in the garage where the dies were found.

Plaintiff in error testified in his own behalf in substance as follows:  He lived at 3347 Michigan avenue, and is one of the Surace Bros. in business at 769 West Taylor street.  He is thirty years of age and came originally from Italy.  On July 19, 1919, he lived at 6047 Normal boulevard, about a block and a half west of 5943 Eggleston avenue.  A young Italian named Mageta rented the garage at 5943 Eg-

gleston avenue some time in the month of April. Plaintiff in error was with him when he rented it. Mageta paid $10 a month for it. A little over a month after he rented it he sold his car and wanted to give up the garage. He went over there to the garage once or twice to return the key to the lady who owned it but did not find her at home. One day he said to plaintiff in error, "Frank, will you do me a favor?" When asked what the favor was he told him he wanted him to give the key to the garage to the landlady, and gave plaintiff in error the key, which he kept in his possession two or three days. On another evening, about June 7 or 8, plaintiff in error had supper at 640 West Sixty-third street at a lunch room and happened to sit at a table where a young man named Plotta and two ladies were also sitting. The young ladies got through eating and went out and plaintiff in error and Plotta engaged in conversation, after which they went out together. Plaintiff in error saw a car at the door, and Plotta asked him if he would take a ride. It was a hot evening and the offer was accepted. They rode together, and Plotta asked him if he knew any place where he could get a private garage. Plaintiff in error told him that he had the key to the garage in question in his possession and that it was empty, and that if he liked the place the landlady might rent it to him. He took Plotta over to the garage about eight o'clock P. M. The landlady was not at home, so plaintiff in error gave him the key and told him he could see the landlady the following day or later. On July 18 he again met Plotta, who had a package in his hand and asked plaintiff in error to leave the package at the garage. Plotta gave him the key to the garage, and when he went over to deliver the package he found three officers there, who arrested him as an automobile thief. The package delivered him by Plotta is the package of dies that was found on plaintiff in error. He denied positively that he at any time told officer Sheahy that he took any machine to that garage. He denied telling

him that he was alone when he took the car there, and testified that at the time the car was placed there he did not know that it was a stolen car. He testified positively that Plotta was the one who placed the car there, and that he had no connection whatever with the cars in that garage and had nothing whatever to do with the garage except what he had already related. He stated that Plotta was an Italian and gave a very indefinite description of him. He also testified that he never saw dies before he got those from Plotta and did not know the purpose for which they were used. He tried to locate Mageta and Plotta after he was arrested but was unable to find either of them or to get any information about them.

The evidence in the record does not warrant this court in reversing the judgment on the ground that the competent evidence in the record does not prove plaintiff in error guilty beyond a reasonable doubt. There can be absolutely no question about the guilt of plaintiff in error unless it be that the officer who testified for the State committed perjury. He had no personal interest in this suit and we cannot believe he has committed perjury. The fact that only one witness testified for the State and that the defendant, testifying in his own behalf, contradicts all the material parts of the State's witness is not ground for reversing the judgment, where the jury is warranted in believing the testimony for the People. (*People* v. *Zurek,* 277 Ill. 621.) The credibility of plaintiff in error must be tested by the usual rules applied to other witnesses when testifying, and in addition to that his interest in the result of the trial is to be given due consideration. There is nothing in the record that tends to discredit the testimony of the witness for the State except the testimony of plaintiff in error, and his testimony is so unsatisfactory that we do not hesitate to say that the jury were warranted in disbelieving him. His story is a very unusual one if it relates actual facts. It is more like fiction,—a pretty story, but a story concern

295—39

ing matters and events having no real existence. To credit his story one would have to believe that plaintiff in error was very gullible and easily trapped by criminals seeking to use him to hide their crime. Any ordinarily keen and sensible man would have been suspicious of Plotta and would not have gone with him to the garage or allowed him to put the car therein without further knowledge of him. The possession of the dies and of a check for another stolen car is a very suspicious circumstance against plaintiff in error, and his account of how he obtained the dies is apparently just as mythical as the rest of his testimony. He had the key to the garage when arrested, and was therefore proven to be in possession of the garage and consequently in possession of the automobile that was stolen. When not explained in a manner sufficient to raise a reasonable doubt of guilt the possession of property recently stolen is *prima facie* evidence of guilt.

The verdict of the jury is as follows: "We, the jury, find the defendant, Frank Surace, guilty of stealing a motor vehicle of the value of $1500, in manner and form as charged in the first count of the indictment; and we further find from the evidence that the defendant, Frank Surace, is not between the ages of 16 and 21, and that he is about the age of 30 years." It is contended by plaintiff in error that this verdict is not responsive to the indictment because the use of the words "stealing a motor vehicle" cannot be sustained. It is insisted that the verdict cannot legally be a verdict of larceny of an automobile because he is not found guilty of the felonious stealing and that he is not found guilty of stealing an automobile. It must be admitted that the giving of this form of verdict, with all its verbosity, was taking an unnecessary chance of committing error. The simple, plain form of verdict, "We, the jury, find the defendant guilty in manner and form as charged in the indictment, and we find the value of the property stolen to be $1500," etc., can rarely be improved

upon by court or jury by the adding of useless and unnecessary words, and such form of verdict is always correct and easily given. But the regular form of verdict is not before us and we must deal with it as it is. An automobile is a motor vehicle, unquestionably. Of course, all motor vehicles are not automobiles. The word "steal" or "stealing" has a universal significance, and in common as well as in legal parlance means the felonious taking and carrying away of the goods of another. To steal a man's property is to take it from his custody with a felonious intention. (2 Pope's Legal Definitions, 1519.) The verdict in this case finds the defendant guilty of stealing a motor vehicle as charged in the first count of the indictment. That count specifically charges the larceny of an automobile, which is a motor vehicle. We think that the verdict is therefore responsive to this count of the indictment in that particular, and that the finding is equivalent to a finding that he is guilty of stealing an automobile as charged in the first count of the indictment. As the word "stealing" actually means a felonious taking and carrying away the personal property of another, we do not think it was necessary to qualify that word in the verdict with the word "felonious" and adding thereto the words "taking and carrying away," etc.

The foregoing are all the objections raised to the verdict. The verdict is sufficiently responsive to the indictment and supports the judgment.

The plaintiff in error complains also of the following instruction:

"The court instructs the jury that possession of stolen property, the proceeds of a robbery or burglary, soon after the commission of the offense is *prima facie* evidence of the guilt of the person in whose possession such property is found."

This instruction is short of the usual modification, "unless such possession is explained," or "unless explained by

other evidence or facts and circumstances which raise a reasonable doubt of defendant's guilt." When so modified the instruction is regarded and has been held a number of times by this court a correct and proper instruction to be given where the evidence warrants it. The words *"prima facie"* are usually unexplained when this instruction is given, and the jury are liable to understand by the giving of such an instruction that the court is telling them that as a matter of law the defendant is to be regarded as guilty under such proof. In reality such conclusion under such evidence is merely a presumption of fact, and is one that the jury should be allowed to entertain or not to entertain, untrammeled by any expression of the court that may not be clear and easily understood. We would not feel justified in condemning this instruction when properly modified as above indicated, which has so long been approved by this court. Instead of the usual instruction it would be more satisfactory if courts would instruct juries, under this condition of the proof, in substance as follows: "The recent and unexplained possession of stolen property by the defendant, if the evidence so shows, tends to establish his guilt, and is sufficient, of itself, to authorize a conviction unless the inference of guilt thereby raised is overcome by other facts and circumstances in evidence, so as to raise in the minds of the jury a reasonable doubt of such guilt." (*State* v. *Brady,* 12 L. R. A. (N. S.) 199, and annotations thereto.) The instruction as worded is faulty, as heretofore recognized by this court, because it did not have the modifying words as above explained. It was error in the court to give it, but under the evidence we do not think it is reversible error. We have heretofore refused to reverse a judgment where the evidence was very strong and apparently conclusive, where the same instruction, in the same words, was given. (*People* v. *Deluce,* 237 Ill. 541.) Our holding is that the explanation given by the defendant was not satisfactory, and when considered entirely it has

no tendency to weaken the force of the other evidence showing recent possession of the property stolen and recent possession of implements handled only by criminals and those who are making legitimate use of them, to neither of which classes the defendant belonged. The modification of the instruction above suggested could therefore have made no change in the result, under our view of the evidence.

During the argument by plaintiff in error's counsel the court called his attention to the fact that he had talked twenty minutes, and reminded him that there was an agreement that each side should use thirty minutes. The court afterwards informed him that he was not limited. No objection was made to that statement of the court, and there was therefore nothing saved in the record for review upon the point. Neither was there any objection made in the trial court to the assistant State's attorney laughing at what he considered the ridiculous testimony of the defendant. Plaintiff in error is therefore not in position to assign any error or claim that he was prejudiced by the acts of the court or State's attorney.

Other objections are made to the argument of the State's attorney, claiming that some of his argument was improper and prejudicial. After an examination of the entire argument of the State's attorney and of all these objections, our conclusion is that they may all be properly disposed of by holding that the argument was not improper. Counsel both for the State and for the defendant must be allowed all proper latitude in their arguments, and no matter how much the court or opposing counsel may differ from the arguing attorney in his conclusions from the evidence, as long as he is arguing the evidence and drawing conclusions therefrom the court cannot legally interfere.

The evidence in this case amply supports the verdict and judgment and no reversible errors appear in the record. The judgment is therefore affirmed.

*Judgment affirmed.*