Eugene **LOCKE** et al., Plaintiffs,

v.

Carol S. **VANCE** et al., Defendants.

Civ. A. No. 69–H–430.

United States District Court

S. D. Texas,

Houston Division.

Dec. 19, 1969.

Raymon Jordan and Bobby H. Caldwell, Houston, Tex., and Benjamin E. Smith, New Orleans, La., for plaintiffs.

Baker, Botts, Shepherd & Coates, Houston, Tex. (Wm. Harvin, R. G. Gooch and R. Palmer), and Joe S. Moss, Houston, Tex., and Robert Flowers, Asst. Atty. Gen. of Texas, of Austin, Tex., for defendants.

Before THORNBERRY, Circuit Judge, and INGRAHAM and SEALS, District Judges.

INGRAHAM, District Judge:

Plaintiffs, Eugene Locke, Dwight Allen and A.A.B.L., sue the defendants Carol S. Vance, Individually and as District Attorney in and for Harris County, Texas; Philip G. Hoffman, President of the University of Houston; Col. W. B. Bates, A. J. Farfel, Mrs. Gus S. Wortham, Edward D. Manion and William P. Hobby, Jr., in their capacities as members of the Board of Regents of the University of Houston, seeking a preliminary and permanent injunction enjoining the defendants from prosecuting them for violation of Article 466a [1] of the Texas Penal Code, V.A.T.S. Plaintiffs additionally seek a declaratory judgment that Article 466a of the Texas

---

[1]. *Art. 466a.* Acts calculated to produce injury or damage to property, person or life of another person; injunctive relief.

442

Penal Code is unconstitutional on its face for vagueness and overbreadth and unconstitutional as applied, being used by defendants in bad faith, not to secure valid convictions, but to deter plaintiffs' civil rights efforts in violation of the First and Fourteenth Amendments to the United States Constitution.

This action is maintained both individually and as a class action, the class including the named plaintiffs and the members of the civil rights organization and its adherents for whom they sue. Plaintiffs invoke the jurisdiction of the court pursuant to Title 28 United States Code, Sections 1343(3), 2201, 2202, 2281, 2284, and Title 42 United States Code, Sections 1983 and 1985.

■ Since plaintiffs pray for injunctive relief from the operation and enforcement of a state statute having a general application and allegedly violative of the Federal Constitution, a three-judge court was convened pursuant to Title 28 United States Code, Section 2281 et seq.

On June 18, 1969, after oral hearing, the court denied plaintiffs' petition for a preliminary injunction.

Defendants moved to dismiss the complaint or, in the alternative, for judgment on the pleadings, asserting that 1) plaintiffs' action is barred by the Anti-Injunction statute, Title 28 United States Code, Section 2283; 2) plaintiffs have failed to show irreparable injury and the absence of an adequate remedy at law; and 3) plaintiffs have failed to raise a substantial constitutional question.

On October 13, 1969, a hearing was held on both the motion to dismiss and the merits of the complaint. The case is now before the court for a determination of both issues. Having heard the evidence presented and having considered the briefs of counsel, the court enters this memorandum, the following to constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

Plaintiffs Eugene Locke and Dwight Allen are members and officers of a black student organization on the University of Houston campus called Afro-Americans for Black Liberation (A.A.B.L.). The circumstances which preceded the filing of this complaint included various forms of protest activities by the plaintiffs in an effort to bring to the attention of the administration, certain reforms which the A.A.B.L. felt necessary to realize their stated objective of:

Elimination of all forms of racial and economic segregation in the state of Texas and to particularly organize students at the University of Houston on social, economic and political levels for the attainment of a richer and fuller academic life for themselves and for all Americans, regardless of race, color, creed or economic status.

Consistent with the above stated objective, the A.A.B.L., on February 7, 1969, presented a list of ten demands to the administration of the University of Houston. The demands included, *inter alia*, the establishment of a comprehensive department of Afro-American studies at the University of Houston and the hiring of more black administrators and faculty members. A special task force was appointed by Dr. Phillip Hoffman, president of the University of Houston, to consider the demands and make recommendations to the university.

Between February 7 and March 17, 1969, the A.A.B.L. organized rallies on the university campus in support of their demands and conferred both publicly and privately with university officials on the subjects contained therein. During this entire period, the administration displayed restraint and good faith in negotiating with the representatives of the A.A.B.L.

However, president Hoffman did not hesitate, in view of rumored disturbances, to restate university policy of long standing that the administration would

not tolerate any major disruption of the educational program or threats to life or property and any student or organization failing to comply with public law subjected themselves to university action and action by public authorities.

Prior to March 17, 1969, the plaintiffs addressed assemblages of persons and spoke openly on the university campus, all without any administration interference or disciplinary action.

On the morning of March 17, 1969, the events of which day gave rise to the instant litigation, Eugene Locke was attacked by three unidentified assailants in a wooded area on the University of Houston campus. As a result of this incident, a rally was organized by Dwight Allen and held at 1:00 p. m. that day in front of the university center. Both Eugene Locke and Dwight Allen addressed the crowd, relating the events of the early morning assault on Mr. Locke and expressing dissatisfaction with the lack of police protection for black students. The rally terminated without incident and the group reassembled at the Traffic and Security Office on the university campus, apparently for the purpose of protesting the lack of action being taken by the Traffic and Security department regarding the assault on Mr. Locke.

The deposition testimony of Sterling Baker, Campus Security Chief, indicates that several members of the group, which numbered approximately 1,000 people by some estimates, made comments to the effect "we are going to take over the building (university center), and get us some free food". Mr. Allen was one of the members of the crowd attributed with making a statement to this effect. Mr. Baker also stated in his deposition that he asked Mr. Locke "not to let those people go over there and tear that building up. He was the one who could stop them, if he would." Shortly after this entreaty by Mr. Baker, the crowd dis-

persed and gathered again in the university center where shortly thereafter furniture was damaged and windows were broken in the Cougar Den and university bookstore. As a consequence of the plaintiffs organization and participation in the March 17th incident and the ensuing property damage, plaintiffs were charged on April 7, 1969, with violation of Article 466a of the Texas Penal Code.

I

We first turn to defendants' motion to dismiss and for the following reasons, deny the same and proceed to a consideration of the merits.

■■ Defendants, through their motion to dismiss, challenge this court's jurisdiction to hear the cause sued upon, asserting that plaintiffs' action is barred by the Anti-Injunction statute, Title 28 U.S.C. Sec. 2283[2] and that plaintiffs have failed to show irreparable injury and the absence of an adequate remedy at law. The scope of inquiry in determining whether a question is properly cognizable by a three-judge court is set forth in Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), where the Court, in a per curiam opinion states:

> When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute. 370 U.S. at 715, 82 S.Ct. at 1296.

Assuming, as we must, that the allegations of the complaint are true, plaintiffs' allegation that a vague overbroad penal statute which is susceptible to sweeping and improper application is be-

**2.** 28 U.S.C. sec. 2283. A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

ing selectively enforced against them, thereby stifling their first amendment rights alléges, at least formally, a sufficient basis for equitable relief. It appears clearly settled that a. showing of unusual circumstances which have a "chilling effect" on the exercise of first amendment freedoms constitute sufficient irreparable injury to supersede the comity principle embodied in Section 2283. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Moreover, "§ 2283 is not a bar to injunctive relief against those pending criminal cases in which it is alleged and the facts indicate that the prosecution is brought in bad faith with the purpose and effect of suppressing speech." Sheridan v. Garrison, 415 F.2d 699 at 707 (5 CA 1969).

In order to determine whether such unusual circumstances exist so as to entitle a plaintiff to injunctive relief, it is frequently necessary to investigate the merits of the claim itself and the state action complained of. Broyhill v. Morris, 408 F.2d 820 (4 CA 1969); Jackson v. Choate, 404 F.2d 910 (5 CA 1968).

Defendants' last ground for dismissal rests upon the alleged failure of the plaintiffs to raise a substantial constitutional question. A constitutional question is considered insubstantial if it is "obviously without merit or because its unsoundness is so clearly demonstrated by previous decisions of the Supreme Court as to foreclose the subject." Landry v. Daley, 280 F.Supp. 929, 935 (N.D. Ill.1967). The allegation in the complaint that a vague, overbroad state penal statute, susceptible to sweeping and improper application is being unconstitutionally applied to the plaintiffs is not obviously without merit nor has the subject been foreclosed by previous Supreme Court decisions. On the contrary, plaintiffs' allegations of "bad faith" prosecution by the defendants is sufficient to raise a substantial constitutional question. Dombrowski v. Pfister, supra; Sheridan v. Garrison, supra; Brooks v.

Briley, 274 F.Supp. 538 (M.D.Tenn. 1967).

Plaintiffs' complaint presents two identifiable and clearly framed grounds for relief—1) that Article 466a of the Texas Penal Code is unconstitutional as applied to plaintiffs, being used by defendants in bad faith to suppress plaintiffs' first amendment rights and 2) that Article 466a of the Texas Penal Code is unconstitutional on its face for vagueness and impermissible overbreadth. In passing on the merits of plaintiffs' claim, we shall consider the issues in the above order.

II

In support of their charge of "bad faith" prosecution, the plaintiffs have alleged that the defendants have conspired and joined together under color of state law and pursuant to a scheme or plan to subject plaintiffs to a deprivation of their constitutional right of freedom of expression. There are additional allegations of harassment, intimidation, interference, jailings, molesting and selective enforcement of Article 466a of the Texas Penal Code, the effect being to deter plaintiffs in the exercise of their first amendment rights. The record and the evidence presented at the October 13th hearing are totally devoid of any facts which would substantiate such allegations. Subsequent to the destruction of university property on March 17, 1969, president Hoffman, after conferring with other university officials, ordered an investigation of the March 17th incident to determine which individuals were responsible for the damage to university property. As a result of the investigations, conducted jointly with the Houston Police Department and members of the Harris County District Attorney's office, some forty statements of individuals concerning the incident were gathered and reviewed by university authorities. Being convinced that public laws had been violated in the destruction of university property, the information and statements obtained during the investigation were turned over

to the office of the Harris County District Attorney. No recommendations or charges were suggested by university officials. After evaluation and analysis by the District Attorney's office, charges under the Texas Penal Code were brought against numerous individuals, including the plaintiffs.

The fact that over three weeks expired from the date of the incident to the time that formal charges were filed militates against the contention that defendants have used the statute in bad faith to discourage protected activities. The plaintiffs have failed to sustain their burden of demonstrating, by clear and convincing evidence that the defendants are prosecuting them under the penal code provision with no expectation of securing valid convictions.

The allegation of selective enforcement of the criminal law by defendants is without merit. There is a conspicuous absence of any evidence which would indicate that the plaintiffs were singled out by the authorities for prosecution or that other conduct which would come within the prohibitions of the statute was knowingly permitted on the campus without criminal prosecution. Plaintiffs mistakenly assume that selective enforcement of the criminal law and the concomitant "special circumstances" justifying injunctive relief from state criminal proceedings is borne out if the defendants have failed to show that plaintiffs' conduct would be sufficient to sustain a criminal conviction. This precise point was discussed by Mr. Justice Brennan in Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968), where he made the following relevant observation:

> This argument mistakenly supposes that 'special circumstances' justifying injunctive relief appear if it is not shown that the statute was in fact violated. But the question for the District Court was not the guilt or innocence of the persons charged; the question was whether the statute was enforced against them with no expec-

tation of convictions but only to discourage exercise of protected rights. The mere possibility of erroneous application of the statute does not amount 'to the irreparable injury necessary to justify a disruption of orderly state proceedings.' Dombrowski v. Pfister, *supra,* * * *. The issue of guilt or innocence is for the state court at the criminal trial; the State was not required to prove appellants guilty in the federal proceeding to escape the finding that the State had no expectation of securing valid convictions. 390 U.S. at 621, 88 S.Ct. at 1341 (footnote omitted)

Consistent with the language of *Cameron,* we do not profess to pass upon the guilt or innocence of the named plaintiffs.

The evidence does not indicate any harassment, intimidation or molestation of the plaintiffs. Indeed, the only action taken against the plaintiffs of which this court is aware is the filing of charges for violation of Article 466a of the Texas Penal Code which stemmed from plaintiffs participation in the events leading to the destruction of university property.

It is clear from the evidence presented that plaintiffs have failed to adduce a sufficient factual basis of bad faith prosecution to bring them within the purview of *Dombrowski's* "special circumstances" that would entitle them to injunctive relief from pending state criminal proceedings. Because plaintiffs have failed to show that the statute was unconstitutionally applied to them, their request for injunctive relief is denied.

### III

In their second ground for relief, plaintiffs seek a declaratory judgment that Article 466a of the Texas Penal Code is unconstitutional on its face for vagueness and impermissible overbreadth.

Consideration of plaintiffs' request for declaratory judgment relief must necessarily begin with the case of Zwickler v.

Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). In *Zwickler,* the Court stated that:

A request for a declaratory judgment that a state statute is overbroad on its face must be considered independently of any request for injunctive relief against the enforcement of that statute. We hold that a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction. 389 U.S. at 254, 88 S.Ct. at 399.

Consistent with the holding of *Zwickler,* we proceed to consider the merits of plaintiffs' declaratory judgment request.

 The language of Article 466a of the Texas Penal Code which is challenged and with which we are here concerned reads, in pertinent part:

*Art. 466a.* Acts calculated to produce *injury or damage to property, person or life of another person; injunctive relief*

Section 1. Every person who, at a time and place and under circumstances reasonably calculated to produce a clear and present and immediate threat or danger to the physical well-being, property or life of another, knowingly and willfully commits an act, or urges another to commit an act, so calculated and tending to produce injury or damage to the property, person or life of another person, shall be guilty of a misdemeanor punishable by a fine of not more than $2,000, or a jail sentence of not more than two (2) years, or by both such fine and jail sentence.

The attack on the statute as being void for vagueness can only be sustained if the statute is "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application * * *." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Judged by this criterion, we cannot say that the statute is constitutionally infirm because of vagueness. The statute proscribes, in explicit terms, the knowing and willful commission of an act or the urging of another to commit an act under circumstances reasonably calculated to produce a clear and present and immediate threat or danger to the physical well-being, property or life of another and the act, or the urging of another to do an act, is calculated and tends to produce such a result. The overall thrust of the statute is to make unlawful the knowing and willful commission of an act which endangers life or property. Likewise, the provision of the statute which prohibits the urging of "another to commit an act, so calculated and tending to produce injury or damage * * *" merely makes the person urging the commission of an act guilty of that which, if he had done himself, would fall within the prohibitions of the statute. This is no more indefinite than numerous aiding and abetting statutes which have heretofore withstood constitutional challenge.

 Plaintiffs cannot seriously contend that they can, under the guise of freedom of speech, urge another to do an unlawful act then shield themselves from criminal responsibility under the umbrella of first amendment freedoms.

 Similarly, Article 466a is not improperly vague for it incorporates the requirement that a specific intent must be shown at the time the actor committed the act or urged another to commit an act under the circumstances and with the result set forth in the statute. As a consequence, "innocent and inadvertent conduct" does not fall within the statute's proscription. See, Landry v. Daley, 280 F.Supp. 938, 959 (1968).

Plaintiffs have relied heavily on numerous previous decisions which have overturned breach of the peace and related statutes where the statute attacked suffered from imprecise definition. See, e. g., Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Terminiello v. Chicago, 337 U.S. 1, 69

S.Ct. 894, 93 L.Ed. 1131 (1948); Hunter v. Allen, 286 F.Supp. 830 (N.D.Ga.1968); University Committee to End The War in Viet Nam v. Gunn, 289 F.Supp. 469 (W.D.Tex.1968); Baker v. Binder, 274 F.Supp. 658 (W.D.Ky.1967); Carmichael v. Allen, 267 F.Supp. 985 (N.D.Ga.1967).

The cases cited by the plaintiffs are inapposite to our consideration of the statute in question. In each of the above cases, there was some subjective element involved in the statute that required the speaker to assess the effect of his words on those to whom he was speaking. Thus, it is constitutionally impermissible to make an offense of conduct which "involves calculations as to the boiling point of a particular person or a particular group * * *" Ashton v. Kentucky, 384 U.S. 195, 200, 86 S.Ct. 1407, 1410, 16 L.Ed.2d 469 (1966).

■ Article 466a of the Texas Penal Code contains no such requirement. What is required, is that the speaker knows, when he urges another to commit *an act*, that that act will tend to produce injury or damage to the life or property of another and while so knowing this, willfully urges the act to be done.

■ Has the Constitutional protection of freedom of speech reached such a zenith that public authorities must idly stand by while life and property are threatened with grave and immediate danger of being destroyed and take affirmative action when, and only when, those threatened possessions are destroyed? We think not.

Plaintiffs lastly contend that Article 466a suffers from impermissible overbreadth and allows state regulation to sweep unnecessarily broadly into the area of protected freedoms. See *Zwickler, supra.* The primary concern seems to be that the inclusion of the "clear and present danger" standard in the statute "adds to the abuse of discretionary application."

The "clear and present danger" test was first enunciated by Mr. Chief Justice Holmes in Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919). Plaintiffs assert that the later decision of Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951), has discredited this standard in the area of first amendment freedoms. A reading of Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), does not bear out that thesis. In *Brandenburg*, the Court referred to *Dennis* and later decisions and stated in a per curiam opinion that:

These later decisions have fashioned the principle that constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation *except* where such advocacy is directed to *inciting or producing imminent lawless action* and is *likely* to incite or produce such action. 395 U.S. at 447, 89 S.Ct. at 1829. (emphasis supplied) (footnote omitted)

The Court went on to amplify these remarks in a footnote, stating:

That this was the basis for *Dennis* was emphasized in Yates v. United States, 354 U.S. 298, 320–324, 77 S.Ct. 1064, 1077–1079, 1 L.Ed.2d 1356 (1957), in which the Court overturned convictions for advocacy of the forcible overthrow of the Government under the Smith Act, because the trial judge's instructions had allowed conviction for mere advocacy, unrelated to its tendency to produce forcible action. 395 U.S. at 447, n. 2, 89 S.Ct. at 1829.

It is abundantly clear that Article 466a of the Texas Penal Code does not embrace within its sweep, protected rights nor can it be interpreted as doing so.

■ The fact that speech may be restricted under certain circumstances cannot be questioned. It was best stated by Mr. Justice Goldberg in Cox v. Louisiana, *supra,* where he remarked:

The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty im-

plies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. 379 U.S. at 554, 85 S.Ct. at 464.

And in United States v. Jefferies, 45 F.R.D. 110 (D.D.C.1968), the constitutionality of the District of Columbia riot statute[3] was upheld with the court making the following observation:

If there is a strong and immediate danger that words will cause grave danger to persons or property, they may be suppressed; the Constitution does not afford any protection. 45 F.R.D. at 116.

We conclude that Article 466a of the Texas Penal Code clearly delineates its reach in terms of common understanding and is neither vague nor overbroad.

For the foregoing reasons, the plaintiffs' request for injunctive and declaratory relief is denied and Article 466a of the Texas Penal Code is declared to be constitutional on its face.

3. Pub.L. 90–226, Title IX, Sec. 901, 81 Stat. 742, Dec. 27, 1967.