**Kenneth W. NATALE, Petitioner-Appellant,**

v.

**UNITED STATES of America, United States Board of Parole, Respondents-Appellees.**

**No. 24410.**

United States Court of Appeals,
Ninth Circuit.

April 3, 1970.

David B. Wexler (argued), William E. Boyd, Tucson, Ariz., for petitioner-appellant.

Richard Alleman (argued), Morton Sitver, Asst. U. S. Attys., Richard K. Burke, U. S. Atty., Phoenix, Ariz., for respondents-appellees.

Before JERTBERG, CARTER and TRASK, Circuit Judges.

JERTBERG, Circuit Judge.

Appellant appeals from an order of the District Court for the District of Arizona, entered July 17, 1968, denying his motion to vacate sentence. On April 2, 1962, appellant was committed to the custody of the Attorney General for a term of ten years, on his plea of guilty to a violation of 18 U.S.C. § 1201(a) [Federal Kidnaping Act], which, in relevant part, provides:

"Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, * * *, kidnaped, * * * and held for ransom or reward or otherwise, * * *, shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed."

Appellant was released on parole from the Federal Penitentiary in June 1968, and is presently incarcerated in the Arizona State Penitentiary, serving a term of four to five years, following his conviction of assault with a deadly weapon. A detainer and parole violator warrant was filed against appellant by the Board of Parole, and appellant now faces the

possibility of the revocation of his parole when his Arizona sentence expires in February, 1971.

At arraignment in the District Court, on March 26, 1962, appellant, represented by counsel, waived indictment by grand jury and elected to proceed on an information filed by the United States Attorney. The charging part of the information filed, reads as follows:

"That KENNETH W. NATALE, on or about the 26th day of February, 1962, did knowingly transport in interstate commerce from Blythe, State of California, to Ehrenberg, State and District of Arizona, one WALTER ELMO PARRISH, he then and there having been unlawfully seized, confined, kidnapped, abducted and carried away by the said defendant, and the said defendant then and there unlawfully held said WALTER ELMO PARRISH for ransom or reward or otherwise, and the said WALTER ELMO PARRISH was not a minor held by his parent."

At the time of his arraignment, Rule 7, Federal Rules of Criminal Procedure, in parts pertinent, provided, and now provides, as follows:

"Rule 7, Federal Rules of Criminal Procedure.

## THE INDICTMENT AND THE INFORMATION

(a) *Use of Indictment or Information.* An offense which may be punished by death shall be prosecuted by indictment. An offense which may be punished by imprisonment for a term exceeding one year or at hard labor shall be prosecuted by indictment or, if indictment is waived, it may be prosecuted by information. Any other offense may be prosecuted by indictment or by information. An information may be filed without leave of court.

(b) *Waiver of Indictment.* An offense which may be punished by imprisonment for a term exceeding one year or at hard labor may be prosecut-

ed by information if the defendant, after he has been advised of the nature of the charge and of his rights, waives in open court prosecution by indictment."

In Smith v. United States, 360 U.S. 1, at p. 10, 79 S.Ct. 991, at 997, 3 L.Ed.2d 1041 (1959), the Supreme Court of the United States held that since a violation of the Federal Kidnaping Act may be punished by death if the victim is not liberated unharmed, and if the jury so recommends, a prosecution for that offense by information instead of indictment violated Rule 7(a), and that the accused's conviction was invalid even though he waived indictment and it was not alleged or proved that the victim was harmed. In closing its opinion, the Court stated:

"Under our view of Rule 7(a), the United States Attorney did not have authority to file an information in this case and the waivers made by petitioner were not binding and did not confer power on the convicting court to hear the case."

In United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), the Supreme Court eliminated the death penalty provision of the Act as tending to deny the accused his Fifth Amendment right not to plead guilty, and the Sixth Amendment right to trial by jury, but upheld the validity of the Act after removal of the death penalty provision.

Following the announcement of the decision in United States v. Jackson, *supra,* appellant filed his motion in the District Court to vacate the sentence imposed upon him following his guilty plea. The District Court denied appellant's motion to vacate his sentence, and by written opinion reported at 287 F.Supp. 96 (D. Ariz.1968), stated, *inter alia,* at pp. 97–98:

"Were *Smith* the only Supreme Court case touching this matter, it is probable that this conviction would have to be set aside. However, on April 8, 1968 that Court decided United States v. Jackson, 390 U.S. 570, 88

S.Ct. 1209, 20 L.Ed.2d 138 (1968), which eliminated the death penalty provision of the Federal Kidnapping Act as tending to deny the accused his Fifth Amendment right not to plead guilty and the Sixth Amendment right to trial by jury. In *Jackson* the Supreme Court upheld the validity of the Act after the removal of the death penalty provision. At least from the date of the decision in *Jackson,* the rule of the *Smith* case is no longer applicable to any prosecution under § 1201(a), as no possibility of capital punishment is involved.

"\* \* \*

"Therefore, it is the conclusion of this Court that *Jackson* is to be applied retroactively. Under this interpretation the death penalty provisions of § 1201(a) have been unconstitutional since the time of first enactment in 1934, and not just since April 8, 1968.

"This being so, when petitioner was arraigned and sentenced in April 1962, under no circumstance was this a case involving a capital offense where the proceedings must be by indictment rather than information. Smith v. United States, supra, is not applicable to this situation.

"Petitioner was represented throughout by counsel; he voluntarily entered a plea of guilty. No prejudice resulted from the filing of an information rather than an indictment."

We are unable to agree with the conclusions reached by the District Court.

The Government asserts, in effect, that the situation must be viewed as it existed in 1968 following the rendition of *Jackson* by the Supreme Court and at the time of the hearing of appellant's motion to vacate sentence, at which time the death penalty clause of the Federal Kidnaping Act had been declared unconstitutional. We reject such contention. In our view we must take the situation as it existed in March 1962, when appellant entered his plea of guilty, at which time the death penalty clause was a part of the Act and its validity had not been questioned.

To reason, as did the District Court, that, under the doctrine of retroactivity, the death penalty clause of the Act had been unconstitutional since the time of its enactment in 1934, overlooks the realities that faced appellant in 1962 when called upon to plead to the charge under the Act which embraced the death penalty clause. To say that the appellant, at the time of his arraignment, should have anticipated that at some future time such clause would be held by the Supreme Court of the United States to be unconstitutional, has no persuasive force in the proper context of this case.

In 1962 the appellant was in the same situation as were the defendants in *Jackson* when they were charged with a violation of the same Act charged against the appellant. In that case, the District Court dismissed the count of the indictment charging a violation of the Federal Kidnaping Act by stating:

"If defendants waive jury trial or plead guilty, therefore, they may thus gain immunity from capital punishment; if they assert their constitutional right to jury trial, however, the price for assertion of such constitutional right is the risk of death." United States v. Jackson, 262 F.Supp. 716 (D.Conn.1967) at p. 718.

On appeal to the Supreme Court from the judgment of dismissal, the Supreme Court in *Jackson* stated, 390 U.S. at pp. 581–583, 88 S.Ct. at p. 1216:

"Under the Federal Kidnaping Act, therefore, the defendant who abandons the right to contest his guilt before a jury is assured that he cannot be executed; the defendant ingenuous enough to seek a jury acquittal stands forewarned that, if the jury finds him guilty and does not wish to spare his life, he will die. Our problem is to decide whether the Constitution permits the establishment of such a death penalty, applicable only to those defendants who assert the right to contest their guilt before a jury. *The*

*inevitable effect of any such provision, is of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial. If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional.* But as the Government notes, limiting the death penalty to cases where the jury recommends its imposition does have another objective: It avoids the more drastic alternative of mandatory capital punishment in every case. In this sense, the selective death penalty procedure established by the Federal Kidnaping Act may be viewed as ameliorating the severity of the more extreme punishment that Congress might have wished to provide.

"The Government suggests that, because the Act thus operates 'to mitigate the severity of punishment,' it is irrelevant that it 'may have the incidental effect of inducing defendants not to contest in full measure.' *We cannot agree. Whatever might be said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights.* Cf. United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L. Ed.2d 508; Shelton v. Tucker, 364 U.S. 479, 488–489, 81 S.Ct. 247, 252, 5 L.Ed. 2d 231. The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive. In this case the answer to that question is clear. * * Whatever the power of Congress to impose a death penalty for violation of the Federal Kidnaping Act, Congress cannot impose such a penalty in a manner that needlessly penalizes the assertion of a constitutional right. See Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106."

[Footnotes omitted. Italics ours.]

The same considerations which moved the Supreme Court in *Jackson* to hold the death penalty clause of the Federal Kidnaping Act to be unconstitutional, were present in 1962 when appellant entered his plea of guilty. The presence of the death penalty clause in the Act must be accorded the same chilling effect on appellant's exercise of his constitutional right under the Fifth Amendment to plead "not guilty", and his constitutional right under the Sixth Amendment, to a jury trial, as was the chilling effect on the defendants in *Jackson* to exercise the same constitutional rights.

Since the order of the District Court must be reversed on constitutional grounds, we deem it unnecessary to discuss the efficacy of appellant's prosecution by information rather than by indictment.

The order of the District Court is reversed.