Rose L. Rubin, J.
New York City’s financial difficulties and the vicissitudes of the investigative process were among the reasons advanced for the 13 months which elapsed between the drug sales charged and defendant Parker’s arrest for commission of the crimes. For the reasons set forth below, this court finds the delay cited does not support the motion to dismiss.
Charged with criminal sale of a controlled substance, cocaine, in the second degree, and criminal sale of a controlled substance, heroin, in the third degree, defendant Parker made three motions to dismiss the indictment: one, in the furtherance of justice; two, for violation of due process because of prejudicial delay between the commission of the crimes and the arrest; and three, for failure to afford him a speedy trial.
Codefendant Bryant, who was charged with five counts of sale of heroin and cocaine, in two indictments, similarly moved to dismiss the indictment because of prearrest delay and also for failure to afford him a speedy trial.
*468 A single hearing was held on all the motions on March 23, 1977, April 15, 1977 and May 13, 1977. The hearing incorporated a Clayton hearing, pursuant to People v Clayton (41 AD2d 204), on Parker’s motion to dismiss in furtherance of justice, and a Townsend hearing on defendants’ motions to dismiss for prearrest delay, in accordance with People v Townsend (38 AD2d 569) and People v Charette (57 AD2d 594).
FACTS
The People called as their witness Police Sergeant Peter Buccino of the Brooklyn South Narcotics District. Defendant Bryant called James Haggerty, investigator for the Legal Aid Society, and Police Lieutenant David Gerrity, commanding officer of the 11th Narcotic District, as his witnesses. Both defendants called Assistant District Attorney James Delaney as their witness. Defendant Parker took the stand in his own behalf.
From the credible evidence adduced at the hearing, the court makes the following findings of fact and reaches the following conclusions of law.
Sergeant Buccino and Lieutenant Gerrity, his superior officer, each testified to the development of police department buy operation No. 162. This operation was commenced on March 26, 1975 with purchases of narcotics by an undercover police officer from the two defendants in a record shop on Jamaica Avenue, in the vicinity of 163rd Street, Queens. Buy operation No. 162 continued with the same undercover police officer and the same confidential informant participating until its termination on April 6, 1976 with the arrest of Parker. It also involved other subjects. A total of four arrests were eventually made. Lieutenant Gerrity testified that buys were made on March 16, 1975, March 20, 1975 and May 16, 1975 from the other two subjects arrested.
The second buy from these defendants, namely from Bryant, allegedly took place on April 3, 1975 in the same record shop. The third buy allegedly went down in a parking lot in the vicinity of the record shop on April 10, 1975 and was followed by buys on April 30, 1975, May 1, 1975 and January 20, 1976, for a total of eight buys from these defendants. Five transactions were consummated in Queens County: two sales on March 26, 1975, by both defendants, April 3, 1975 involving defend *469 ant Bryant and two on April 10, 1975 involving defendant Bryant.
Bryant was arrested on March 22, 1976 in New York County and indicted in New York County on April 4, 1976. Thereafter, Parker was arrested on April 6, 1976 in the same record shop. Both defendants were subsequently indicted in Queens County on April 27, 1976, on which date an arrest warrant was issued for defendant Bryant.
Each police officer testified that the arrests were not made earlier because of: (1) the need to protect the undercover police officers and the confidential informant; (2) the discontinuance of investigations during the summer of 1975 due to cutbacks in police department personnel, especially in the narcotics division, as a result of the city’s financial crisis; (3) the use of this investigation to try to reach higher-ups in the drug trade and to make larger drug buys; (4) the maintenance of the cover of the undercover police officer who was involved in an additional continuing investigation and who had to be removed from the streets because he became the object of an assassination attempt which resulted in arrests; (5) the delay in closing buy operation 162 when the undercover police, officer told Sergeant Buccino that defendant Bryant had announced intentions to go to Florida where he had a connection for the purchase of narcotics; and (6) the two to three weeks delay in the arrest of Parker to give Bryant, who had been arrested earlier, an opportunity to co-operate with the police.
Although only the transactions on March 26, 1975 involved defendant Parker, it was determined not to arrest him prior to the arrest of Bryant in order to avoid a tipoff to Bryant. Notwithstanding Bryant’s arrest in New York County, he was not brought before the court in Queens County on these charges until September 27, 1976, when he was arraigned on both indictments. Each police officer testified that he was under the mistaken belief that the New York County arrest of Bryant would encompass all of the sales in which he had allegedly participated, including the ones in Queens County. It is the passage of time between Bryant’s indictment on April 27, 1976 and his arraignment on September 27, 1976 which forms the predicate of his motion to dismiss the indictment for failure to prosecute.
Haggerty testified to his unsuccessful investigative efforts at the record shop. According to the evidence before this court, the efforts of this witness when he visited the record shop in *470 October, 1976 appear to be the only attempt made by Bryant to reconstruct the events of the sales with which he is charged.
Assistant District Attorney Delaney testified that his concern with the outcome of buy operation No. 162 revolved around the participation of the confidential informant.
Defendant Parker’s testimony and his moving papers, though artfully phrased, consist, in sum, of a bare allegation that he cannot remember the events of March 26, 1975. He testified that he had contacted the owner of the record store where he had been employed and which was the site of the alleged sales. He admitted, however, that he failed to ask the owner for assistance in reconstructing the relevant events or in locating witnesses. Parker testified, also, that he conferred with codefendant Bryant, but that together they were unable to recall the events of March 26, 1976. In his motion papers, dated December 7, 1976, in support of his pretrial omnibus motion, Parker contended, inter alia, that the indictment should be dismissed on the ground that his participation in the alleged sales consisted of a telephone call to Bryant seeking a supply of cocaine for a friend. In light of the specific facts set forth in the moving papers, it would appear that Parker has significant ability to reconstruct the occurrences of March 26, 1975 and that he can properly participate in the defense of this action.
parker’s motion to dismiss in furtherance of justice
On May 13, 1977, at the conclusion of the extensive hearing, the court, in its discretion, denied Parker’s motion to dismiss the indictment in the interest of justice (CPL 210.20, 210.40).
The controlling statute, CPL 210.40, reads as follows: "1. An indictment or any count thereof may be dismissed in furtherance of justice, as provided in paragraph (i) of subdivision one of section 210.20, when, even though there may be no basis for dismissal as a matter of law upon any ground specified in paragraphs (a) through (h) of said subdivision one of section 210.20, such dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such indictment or count would constitute or result in injustice.”
The motion addresses itself to considerations which are *471 unrelated to the facts or the law, but which militate to protect society. In the language of Clayton (41 AD2d 204, 208, supra): "The sensitive balance between the individual and the State that must be maintained in applying the test of the interests of justice which CPL 210.40 contemplates moves in response to factors largely resting on value judgments of the court. But those judgments in turn hinge on the production of facts in the possession of the prosecution and the defendant. Moreover, the discretion of the court cannot be properly reviewed unless the record discloses the facts upon which the court’s judgment was based. On the one side the statute allows an escape from the rigorous rules controlling the dismissal of an indictment only for reasons arising from substantial defects in supporting evidence or required procedure; on the other side, the statute erects the well-considered discretion of the court as a safeguard to prevent a dismissal of the indictment unless the public interests are as fully protected as the individual interests of the defendant for justice and mercy.”
The record before me is barren of considerations which could persuade me to dismiss the indictment in the interest of justice.
LAPSE OF TIME BETWEEN THE COMMISSION OF THE CRIMES AND THE ARRESTS
The major thrust of defendants’ motions is the alleged delay in initiating the respective criminal prosecutions. Parker cites as prejudicial delay the time between March 26, 1975 and the date of his arrest on April 6, 1976. Bryant cites as prejudicial delay the time between April 10, 1975, the date of the last sale in Queens County, and April 27, 1976, the date of his indictment in Queens County.
Defendants have no constitutional or statutory right to be speedily arrested (Hoffa v United States, 385 US 293). Institution of prosecution is defined by the statutory time limits established by the Legislature which provide "’the primary guaranty against bringing overly stale criminal charges’.” (United States v Marion, 404 US 307, 322; People v Outterbridge, 29 AD2d 692.)
Defendants are charged with the commission of class A felonies. No time limitation is set by statute for the institution of prosecution in this case. The Statute of Limitations applicable to the trial of a class A felony is found in CPL 30.10 (subd 2, par [a]) which provides that "prosecution for a class A *472 felony may be commenced at any time.” Where, however, the institution of a criminal action is delayed after discovery by the authorities, there may arise a constitutional question of denial of due process (United States v Marion, supra; Powell v United States, 352 F2d 705).
The recent decision of the United States Supreme Court in United States v Lovasco (431 US 783, 52 LEd2d 752 [1977]) is dispositive of this issue. The policy considerations relating to delay in such cases and the applicable rules are there carefully reviewed by Mr. Justice Marshall. In Lovasco, the court held that a delay of more than 18 months between the time Federal criminal offenses were alleged to have occurred and the defendant’s indictment did not deprive the defendant of due process, notwithstanding the fact that two possible witnesses had died in the interim. Absent delay "to gain tactical advantage over the accused,” (United States v Marion, supra, p 324), the mere passage of time between the alleged criminal acts and indictment does not, by itself, create oppressive delay violative of the Due Process Clause of the Fifth Amendment. Due process requires inquiry and consideration of the reasons for the delay, as well as the prejudice to the accused.
Considerable leeway is accorded the prosecution to determine when proceedings shall be instituted. In the language of Lovasco (supra, p 790): "But the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor’s judgment as to when to seek an indictment.” The United States Supreme Court takes cognizance of the fact that to require a prosecutor to speed the initiation of criminal prosecution after evidence has been assembled does not necessarily comport with the public interest. In reversing the Federal District Court and the Federal Court of Appeals, the Supreme Court stated (supra, pp 795-796): "Penalizing prosecutors who defer action for these reasons [proper investigative delay] would subordinate the goal of 'orderly expedition’ to that of 'mere speed,’ Smith v United States, 360 US 1.10 (1959). This the Due Process Clause does not require. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.”
The United States Supreme Court’s final comment is noteworthy. In the five years since the Marion (supra), decision, so *473 few defendants have established that they were prejudiced by preaccusation delay that no court has had "a sustained opportunity to consider the constitutional significance of various reasons for delay” (supra, p 797) and, thus, each case must be decided on its own particular facts.
In the case before me, the record discloses no significant delay or any prejudice as to defendant Bryant.
As to defendant Parker, the delays which arose from the reduction in police personnel due to the then existent financial distress of the city, the threats to the life of the undercover police officer, the necessity to follow through on the investigation in which codefendant continued to be a major factor and the interruptions occasioned by the exigencies and dangers attached to law enforcement activities all constitute adequate explanations for the timing of Parker’s arrest. The record is bare of evidence that the delay alleged resulted from any tactical advantage sought or gained by the prosecutor over the accused. Additionally, Parker has failed to demonstrate prejudice.
Defendants’ motions to dismiss the indictments for prejudicial prearrest delay are, therefore, denied.
SPEEDY TRIAL
The constitutional and statutory right to a speedy trial, the guaranty of prompt prosecution, is a shield against prosecutorial delay and its resultant prejudice to a defendant. Once a defendant becomes an accused, the constitutional and statutory right to a speedy trial attaches. (Dillingham v United States, 423 US 64; CPL 30.30.) Defendant becomes an accused when there is either an indictment or an information or when restraint is actually imposed by the arrest and detention of the defendant to answer for a criminal charge. In this State, failure to conduct a prompt prosecution, in a proper case, may result in dismissal of the indictment, even in the absence of prejudice to the defendant. (People v Staley, 41 NY2d 789.)
The question before this court, therefore, is whether the postindictment delay alleged, by itself, or considered together with the preindictment delay alleged, deprived defendants of their constitutional and statutory right to a speedy trial. This court holds in the negative.
Bryant was" arrested on March 22, 1976 for sales allegedly *474 made between March 26, 1975 and January 20, 1976, without regard to the county in which the sales were made. Although arrested in Manhattan, defendant could and would have to be prosecuted in Queens for the sales made in that county. (CPL 20.40.) Bryant’s right to a speedy trial attached as of the time of his arrest. It was six months and three days later that he was arraigned upon these indictments in this county. Were Bryant the sole defendant named in both indictments, this delay could be dispositive of the issue since his whereabouts were known to the police and to the special narcotics prosecutor since March 22, 1976. The explanation proffered by Lieutenant Gerrity and Sergeant Buccino is insufficient to explain delay.
Controlling here is CPL 30.30. Paragraph (a) of subdivision 1 requires dismissal of the indictment on defendant’s motion where the People are not ready for trial within six months of the commencement of a criminal action wherein the defendant is accused of a felony. Subdivision 4 defines the computation of the six-month period as follows: "4. In computing the time within which the People must be ready for trial pursuant to subdivisions one and two, the following periods must be excluded * * * (d) a reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial pursuant to this section has not run and good cause is not shown for granting a severance”. Paragraph (a) of subdivision 4 of this section also excludes a reasonable period of delay resulting from other proceedings concerning the defendant and periods during which such matters are under consideration by the court.
Defendant Parker was arraigned upon indictment No. 8106/ 76 on May 24, 1976. On June 2, 1976, this indictment appeared on the calendar of this court for the first time. On September 27, 1976, defendant Bryant appeared before this court for the first time on both indictments. At that time a delay of approximately 38 days was chargeable to the People. Adding to this the 15 days which elapsed between the arrest of Bryant and the arrest of Parker, the People are chargeable with a total of a 53-day delay. Thereafter, all of the continuances have been at defendants’ requests or on consent, except for two, one each at the People’s request and at the court’s request.
Based on the above considerations, the court finds that defendants have not been deprived of their right to a speedy *475 trial either by reason of preindictment delay or by reason of postindictment delay, or by a consideration of both. Accordingly, defendants’ motions to dismiss the indictments are denied in all respects.